THE PEOPLE *ex rel.* Franz Schack

*v.*

HARDIN B. BRAYTON.

1. CONSOLIDATING TOWNS *in counties under township organization—can only be done upon a vote of the people.* The action of the board of commissioners of Cook county—a county under township organization—on the 12th day of January, 1880, in attempting to unite the towns of North Chicago, West Chicago and South Chicago into one town, by resolution of the board, without submitting the question to a vote of the people, was without authority of law and void.

2. Section 37 of chapter 139, Rev. Stat. 1874, entitled "Township Organization," expressly provides that county boards in counties which have adopted township organization shall not have power to consolidate several towns into one, except that, upon the petition to the board of one-fourth of the voters in each of the towns proposed to be consolidated, the question shall be submitted to the voters of said towns, and that a majority of voters in each town voting shall have voted in favor of the proposition.

3. The first section of the act of 1877, concerning the organization of towns by county boards, does not operate to repeal section 37 of the Township Organization Law of 1874, in regard to the requirement that the question of uniting several towns into one shall be submitted to a vote of the people of the several towns before any action in that regard can become operative.

4. The two sections mentioned relate to wholly different subjects. Section 37 of the law of 1874 relates to the subject of consolidating several organized towns into a single town. Section 1 of the act of 1877 has no relation to that subject, but simply provides for the organization of a new town from territory comprising a city containing a certain population, situated within an organized town, without regard to the territorial extent of such new town. The purpose of the act of 1877 was to confer a new power in that regard, not theretofore existing, as the law of 1874 contained a restriction upon the power to create new towns in requiring that they should embrace a certain extent of territory. So there is no repugnancy between the two acts in respect to the subject of 'uniting two or more towns into one, and they may well stand together.

5. Attributing the purpose mentioned to the first section of the act of 1877, it is not obnoxious to the constitutional objection that it permits the consolidation of two or more towns into one without a vote of the people. And under this construction of the first section, it being constitutional, it is unnecessary in this case to consider whether the remaining sections of the act are constitutional or not.

6. ACT OF 1879—*as to consolidating towns for park purposes—its constitutionality.* The act of May 28, 1879, " concerning the continuance of towns for park purposes," does not undertake to provide for the consolidation of several towns into one, except " in the manner provided by law," which would be referred to the existing law on that subject, which provides that such consolidation can only be had upon a vote of the people,—so the act is not in violation of the constitutional requirement in that regard.

7. REPEAL OF STATUTES—*by implication.* A repeal of a statute by implication is not favored. To repeal a statute by implication, there must be such a positive repugnancy between the old and the new that they can not stand together or be consistently reconciled.

This was an application for a *mandamus* in this court by the relator, Franz Schack, against Hardin B. Brayton.

Mr. CONSIDER H. WILLETT, and Mr. JAMES P. ROOT, for the relator.

Mr. GEO. W. SMITH, for the respondent.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The question presented by this record involves the legality of the action of the board of commissioners of Cook county had on the 12th day of January, 1880, in which 'the board consolidated the towns of South Chicago, West Chicago and North Chicago by the adoption of a resolution, as follows: *"Resolved,* by the board of commissioners of Cook county, that the three towns of South Chicago, West Chicago and North Chicago be consolidated together and form one town, and that the territory embraced within said three towns, being the territory embraced within the city of Chicago, be organized as a town, to be known as the Town of Chicago."

As appears from the record, the proceedings of the board were had in pursuance of a resolution, adopted by the city council of Chicago on the 8th day of February, 1878, as follows:

*"Resolved,* That the county board of Cook county be and is hereby requested to provide that the three town boards of North Chicago, South Chicago and West Chicago be consolidated or abolished (as being useless and expensive organizations), and that the territory embraced within the city be organized into a single town, in accordance with the provisions of section 1 of an act entitled 'An act to authorize county boards in counties under township organization to organize certain territory therein into a town,' approved May 23, 1877, in force July 1, 1877." Laws of 1877, page 202.

Prior to this action of the board of commissioners, and on the 8th day of September, 1879, it appears from the record that the board passed a resolution by which it submitted to the voters of North Chicago the question to be voted upon at the November election whether the town should be established and continued as a park district; at the same time, by resolution duly passed, the question was submitted to the voters of West Chicago whether the town of West Chicago should be established and continued as a park district, or town, for park pur-

poses. It also appears that the election was held in each of the towns and resulted in favor of the proposition submitted. These elections were held, under and by virtue of an act entitled "Continuance of towns for park purposes," in force July 1, 1879. Laws of 1879, page 212.

Section 5 of article 10 of the constitution declares that the General Assembly shall provide by general law for township organization, under which any county may organize whenever a majority of the legal voters of such county, voting at any general election, shall so determine. The same section also provides that when township organization shall have been adopted by a vote of the people, it can only be abolished by a like vote, in the same manner that it was adopted. The section also declares that no two townships shall have the same name, and the day of holding the annual township meeting shall be uniform throughout the State. In pursuance of this constitutional provision the legislature enacted chapter 139 of the Revised Statutes of 1874, entitled "Township Organization." Under sec. 6, after township organization has been adopted and commissioners appointed to divide the county into towns, it is provided that the commissioners shall proceed to divide such county into towns, making them conform to the townships according to the government survey, which would make the towns six miles square.

Section 37 of the same act provides that the county board of each county shall have full power and jurisdiction to unite two contiguous towns into one, but no such towns shall be united except in the following manner, that is to say : Whenever one-fourth of the voters in each of the towns sought to be united shall petition the county board to unite such towns, said county board shall cause to be submitted to the voters of said towns, at a general annual election to be holden in each of such towns, the question of uniting. The section also requires the ballots to be used to be "For uniting" or "Against uniting." If, upon a canvass of the votes, a majority of voters of each town voting at such election shall vote for

uniting such towns, the county board shall proceed to declare such towns united, give the united towns a name, and define the boundaries thereof.

This provision of the statute requiring the question to be submitted to the voters of the towns proposed to be united was doubtless framed in view of the fact that one town might be indebted, and if the county board had proceeded to unite the two without a vote of the people to be affected, a debt would be imposed upon a town without its consent, in violation of the organic law of the State. But aside from this question, the section is eminently just in requiring the people who are to be affected to give their assent before the board can proceed to unite two towns into one. It is conceded that the board of commissioners of Cook county did not submit the question of uniting the three towns into one to a vote of the people of the towns, as required by sec. 37. Unless, therefore, this statute has been changed by subsequent legislation, the action of the board can not be sustained. It is, however, contended that that section (37, *supra*) has been changed by sec. 1 of an act entitled " Organization of towns by county boards," in force July 1, 1877 (Laws of 1877, page 212), which provides that the county board in any county under township organization may provide that the territory embraced within any city in such county shall be organized as a town, provided such territory shall have a population of not less than 3000, and provided the city council in such city shall, by resolution, request such action by the county board. This act of 1877 does not profess to amend or repeal any portion of chapter 139 of the statute relating to township organization. Section 37 of the last named act must, therefore, be regarded as in full force unless the act of 1877 is so repugnant to it that the two can not stand together. A repeal by implication is not favored. To repeal a statute by implication there must be such a positive repugnancy between the provisions of the new law and the old that they can not stand together or be consistently reconciled. Potter's Dwarris on

Statutes, 155.    Can it be said that there is such a repugnancy between the two statutes that they can not be reconciled or stand together?    We do not so regard them.    Upon a close examination the two sections will be found to relate to different subjects.

Section 37 provides the manner in which two towns may be united, while section 1 of the act of 1877 authorizes the county board to organize a town from territory composed of a city when the city has a population of not less than 3000 inhabitants, but there is not a single word contained in the section relating to the subject of uniting two or more organized towns into one, nor does the section contain a provision in regard to the consolidation of two or more organized towns, neither does it confer any power on the board to provide a name for a town.    But, notwithstanding the section of the statute is silent on these subjects, the board proceeded, by resolution, to wipe out three organized towns, which had originally been established by a vote of the people, and known as North Chicago, West Chicago and South Chicago, and unite the territory embraced in these three towns into one town, to be known as the town of Chicago.    No authority is needed to show that such extraordinary power ought not and can not be exercised, unless the legislature has, by clear and express language, conferred the authority upon the county board.    But the question arises, what was intended by the passage of sec. 1 of the act of 1877?

The section, when closely examined in connection with the various sections of chapter 139 of the Revised Statutes, will be found to confer a new power on the board which had not previously been delegated to that body.    An examination of the different sections of chapter 139 will demonstrate that previous to the passage of the act of 1877 the county board had no power to organize a town out of territory composed of a city situated in an organized town.

Under section 20 of the chapter, *supra,* it is provided, that where in any county under township organization there is any

territory co-extensive with the limits of a city situated therein, and which is not included within any organized town, such territory shall constitute a town by the name of such city.

Under section 26 the board has full power to alter the boundaries of towns, to change town lines, and to divide, enlarge and create new towns; but no town shall be created of less territory than seventeen square miles. Were it not for the requirement that a new town created should contain not less than seventeen square miles, this section might be held broad enough to confer the same power as does the first section of the act of 1877, but the limitation imposed shows clearly that it was not intended that such power should be given.

The only remaining sections of the chapter that relate to the subject are sections 6 and 37, neither of which confers the power that is conferred by the first section of the act of 1877. We find, then, no provision of the Revised Statutes of 1874 which authorizes the county board to organize a town out of the territory embraced within a city while that territory has a population of not less than three thousand inhabitants, and it was doubtless the purpose, and only purpose of the legislature, in enacting section 1 of the act of 1877, to provide for a case of this character,—to supply a supposed omission in the statute. In other words, where a town organized under the township organization law contained within its limits a city with a population of not less than three thousand inhabitants, the county board was authorized to establish a town out of the territory embraced within the city.

We do not suppose it was contemplated by the legislature to change or repeal or modify, in the least, section 37, which provides the steps that shall be taken and the course that shall be pursued before the county board can unite two towns into one, because it is unreasonable to believe that the legislature would have changed, modified or repealed that section without in any manner alluding to it in the act of 1877. We do not, therefore, regard section 1 of the act of 1877 so repugnant to section 37 of the Township Organization act as to

authorize us to hold that the last named section was repealed by implication by the former. It has been urged that the first section of the act of 1877 is unconstitutional, but, if we are correct in the construction we have given the section, it can not be unconstitutional; but, if on the other hand it was construed to mean to confer power on the county board to unite two or more towns without submitting the question to a vote of the people of the towns to be affected, a serious question would arise in regard to the constitutionality of the act. If the legislature can confer the power on the county board to unite three towns into one without submitting the question to a vote of the people of the towns, upon the same principle the board might be authorized to unite six towns; and if the legislature can authorize the union of six towns, then the board may be authorized to unite all the towns in a county into one, which would in effect abolish township organization without a vote of the people, which, under the section of the constitution, *supra*, can not be done.

It is insisted by counsel for respondent, that the other sections of the act of 1877 are unconstitutional. If it be true that the other sections of the act are unconstitutional, that does not affect the first section; but if the construction we have placed upon the first section of the act be the correct one, it will not be necessary to inquire into the validity of the remaining sections. Had the proceedings of the board under the first section been sustained, then it would have become important to inquire into the validity of the other sections.

The validity of an act, approved May 28, 1879, entitled an act for the " continuance of towns for park purposes," (Laws 1879, page 212,) under which a vote was had in two of the towns on the question whether the towns should be continued as a park district for park purposes, has been called in question. There is nothing in this act which confers any power on the county board to create a new town, or unite two towns into one. The only portion of the act which relates in

the least to the subject, is the last part of section two, which reads as follows: "If such park district is established, or town continued for park purposes as aforesaid, then the county board may proceed to consolidate said town with another town or towns, or change the boundaries thereof in the manner provided by law." It is manifest that this act does not profess to prescribe the manner in which the board shall proceed, but in this regard its action must conform to the existing law on the subject; and as we have heretofore stated the statute which governs the subject is section 37 of the township organization law, the board was bound to follow the requirements of that section.

Our conclusion then is, that the action of the board, in uniting the towns without first having submitted the question to a vote of the people of the towns, is illegal.

The *mandamus* will be refused.

*Mandamus refused.*

Mr. JUSTICE DICKEY dissenting.