THE PEOPLE *ex rel.* C. Henry Meyer

*v.*

WILLIS HAZELWOOD, County Clerk.

*Filed at Springfield March 27, 1886.*

1. TOWNSHIP ORGANIZATION—*acts of 1877 and 1883—constitutionality —whether creating an independent system from that under the general law.* The act of May 23, 1877, entitled "An act to authorize county boards under township organization to organize certain territory situated therein, as a town," and the amendment, in 1883, of the fifth section thereof, do not create a new and independent system of township organization, but is an adoption of that system with modifications deemed essential to territory under city organization, and is to be taken, with the prior general law, as constituting an entire system, and is a valid constitutional law.

2. SAME—*application of sections 1 and 2 of the act of 1877—as to cities within a town, and where the boundaries of each are the same.* Section 2 of such act of 1877 is in substance and effect but a reënactment of section 20 of the Township Organization act of 1874, under which the territory composing the city of Quincy was organized as a town, and makes such territory a town. Section 1 of the act of 1877 applies to the territory of cities within a town, while section 2 applies to the territory of a city the limits and boundaries of which are the same with the township. Under section 1 the township is divided, while it is not under section 2.

3. SAME—*adapting the means to the end—constitutionality—whether the act local and special.* The mode of transacting township affairs and the selection of the instrumentalities to that end, are incidents to the organization of territory into townships. An act for the creation of the territory of cities into towns, under the township organization system, will authorize the passage of such provisions as are essential to make the law uniform in its application, and relieve it of constitutional objection as being local or special.

4. So the legislature may provide somewhat different means and instrumentalities for the government and management of the affairs of towns lying wholly in the country, and those the entire territory of which is covered by an incorporated city, without making the law obnoxious to the constitutional objection of being special and local.

5. SAME—*making a city treasurer a town collector.* A section of the law relating to towns covering the same territory with cities, authorized the city council of any such city and town "to provide, by ordinance, that the offices of treasurer and town collector shall be united in the same person." An ordinance under it declared the city treasurer to be town collector: *Held,* that the ordinance was a compliance with the statute, and that the city treasurer, when elected, became also town collector.

| 116 | 319 |
| 127 | 503 |
| 116 | 319 |
| 128 | 233 |
| 129 | 377 |
| 116 | 319 |
| 130 | 115 |
| 116 | 319 |
| 133 | 135 |
| 133 | 576 |
| 116 | 319 |
| 139 | 117 |
| 144 | 566 |
| 146 | 455 |
| 116 | 319 |
| 149 | 491 |
| 151 | 674 |
| 116 | 319 |
| 49a | 373 |
| 116 | 319 |
| 178 | 291 |
| 116 | 319 |
| 205 | 7494 |

6. STATUTES—CONSTITUTIONALITY—*title of the act.* The constitutional provision in relation to the title to statutes embracing the subject of the enactment, does not require that the title to an act shall set forth a detailed statement, or an index or abstract of its contents. The title is sufficient if comprehensive enough to reasonably include the several objects which the statute assumes to effect. When the general purpose is declared, the means for its accomplishment will be presumed as intended as a necessary incident.

7. SAME—*general—or local and special.* A law is general and uniform, and not subject to the objection of being local or special, when it is general and uniform in its operation upon all in like situation.

8. SAME—*construction—doubts solved in favor of laws.* Where it is doubtful with the court whether an act of the legislature is in violation of the constitution, the doubt must be solved in favor of the validity of the law. It is only when the court is clearly satisfied, that it will pronounce a law unconstitutional.

9. It will never be presumed that the legislature intended to enact a statute in contravention of the constitution, unless such conclusion, after a careful consideration of all its provisions, can not reasonably be avoided; and the courts will not give an enactment such a construction as will render it unconstitutional, if it can be avoided.

10. SAME—*when part of law only held unconstitutional.* Where a section of a statute is not so intimately connected with the remaining parts thereof, and the balance of the act so dependent upon it as to lead to the conclusion the act would not have been passed but for such section, if it is unconstitutional the whole must fall with it, but otherwise not. When the rest of the act may well stand without it, and is capable of enforcement, it will not be declared void.

11. Therefore, section 3 of the act entitled "An act to authorize county boards in counties under township organization to organize certain territory situated therein, as a town," which provides a different day for holding the annual elections from the general act, in such new towns formed under that act, if in conflict with the constitution may be rejected as void, leaving the rest to stand as a valid enactment.

This is an original proceeding in this court, on the relation of C. Henry Meyer, who claims to be town collector for the town of Quincy, for a *mandamus* against Willis Hazelwood, county clerk of Adams county, commanding him to deliver to the relator the tax books for that town for the year A. D. 1885. Sufficient allegations are in the petition to entitle the relator to the *mandamus* prayed for, if, under the statute in

force and applicable, the office of town collector exists independently of the office of city treasurer of the city of Quincy. The respondent sets up an ordinance of the city of Quincy, whereby the duties of town collector of that town are devolved upon the city treasurer; that Charles F. Schwindeler, city treasurer, who has formally qualified for that purpose, has demanded the tax books, and that respondent, being unable to decide between the parties, has refused to deliver the tax books to either. The parties stipulate as follows:

"It is hereby conceded and agreed by the parties in interest in this cause, that if the office of town collector of the town of Quincy, in Adams county, Illinois, was not, by force and effect of the act of the General Assembly of the State of Illinois, entitled 'An act to authorize county boards, in counties under township organization, to organize certain territory situated therein as a town,' approved May 29, and in force July 1, 1877, and the act of 1883, amendatory of the fifth section of said first named act, and the ordinances of the city of Quincy, in respondent Hazelwood's answer set forth, united, to the office of city treasurer of said city of Quincy, in said county, in the person of said city treasurer, then the relator, C. Henry Meyer, is the lawfully elected and qualified town collector of said town, and that upon his petition in said cause, and the answer of respondent Hazelwood thereto, and the demurrer of the petitioner to said answer, said relator is entitled to the writ of *mandamus* prayed for in his said petition. If, however, on the other hand, the said office of town collector was, by force and effect of the acts and ordinances aforesaid, united to the office of city treasurer of said city of Quincy, in the person of said city treasurer, then said relator is not such collector, and is not entitled to any relief in this cause. And it is further conceded and agreed that the town of Quincy was fully organized as a town, by, under and in pursuance of the general Township Organization law, approved and in force March 4, 1874, and that the bond of

21—116 ILL.

relator, C. Henry Meyer, was approved by the supervisor and town clerk of said town, as alleged in the petition, and before said supervisor and town clerk approved the bond of said Charles F. Schwindeler, as alleged in the answer of respondent, and the pleadings in this cause may be treated as properly alleging the facts herein conceded and agreed to."

Messrs. Carter & Govert, for the petitioner.

Mr. George A. Anderson, and Mr. Wm. McFadon, for the respondent.

Mr. Justice Scholfield delivered the opinion of the Court:

The section of the general Township Organization law, in force March 21, 1874, under which the town of Quincy was organized, is the twentieth, and reads thus: "When, in any county under township organization, there is any territory co-extensive with the limits of a city situated therein, and which is not included within any organized town, such territory shall constitute a town by the name of such city, and all the provisions of this act shall apply to the town so constituted, the same as if it had been organized in the manner provided in this act in the case of the organization of new towns." Thereafter, on the 23d of May, A. D. 1877, an act was approved, entitled "An act to authorize county boards under township organization to organize certain territory situated therein as a town." The first and second sections are as follows:

"Sec. 1. That the county board in any county under township organization, may provide that the territory embraced within any city in such county shall be organized as a town: *Provided*, such territory shall have a population of not less than three thousand: *And provided*, the city council in such city shall, by resolution, request such action by the county board.

"Sec. 2.   The territory of any city now organized, within the limits of any county under township organization, and not situated within any town, shall be deemed to be a town."

The third section requires that all town officers shall be elected at the annual charter election of such city.   The fourth section provides that the powers vested in the town shall be exercised by the city council.   The fifth section was amended by an act approved June 18, 1883, so as to read as follows:   "The city council in such city and town may, by ordinance, provide that the offices of city and town clerk shall be united in the same person; that the offices of treasurer and town collecter shall be united in the same person; that the election of highway commissioners shall be discontinued, and that the offices of supervisor and poor-master shall be separated, and the poor-master be appointed by the city council."

Plainly, as we think, this is not the creation of a new and independent system of township organization, but an adaptation of the general system previously in force, with modifications deemed essential to the different relations and circumstances, to territory under city organization, and this act is therefore *in pari materia* with the statute embracing the general law in relation to township organization, and the whole must be read and construed together as constituting one entire system, and as if enacted in a single act.   *Young* v. *Stearns*, 91 Ill. 221;   *Nance* v. *Howard*, Breese, (Beecher's ed.) 245.

It was not ruled in *The People ex rel.* v. *Brayton*, 94 Ill. 341, that this act did not in any respect amend or change the law previously existing in relation to township organization, but simply that it did not repeal or amend the law requiring that the question of uniting several towns into one shall be submitted to a vote of the people.   On the contrary, it was expressly said that section 1 was intended to supply a supposed omission in the statute, and authorize the county board, where a township organized under the Township Organization law contained within its limits a city with a population of not

less than three thousand inhabitants, to establish a township out of the territory embraced within the city. The effect of the other sections did not fall within the line of investigation and discussion, and no opinion of any kind was expressed in regard to either of them.

The second section is, in our opinion, in substance and effect but a reënactment of the section of the general law by virtue of which the city was in the first instance incorporated. The territory of the city of Quincy is not, as counsel contend, within the town of Quincy. Its limits are simply *coëxtensive with* the limits of the territory of that town, and, therefore, neither is *within* the other. Not only is this construction required by the literal meaning of the word "*within,*" in this connection, but it is essential to give section 2 a distinct, effective meaning, for it can not be reasonably pretended, and in the argument here it is not, that, in counties organized into townships under the general law, there can be any territory outside of the limits of an organized township, whether in a city or elsewhere, and section 1, applying to all instances where a township contains within its limits a city with a population of not less than three thousand inhabitants, and authorizing the county board to establish a township out of the territory embraced within the city,—that is, in effect, dividing the township. The only instance in which the words employed can have their full meaning, is where the limits of the city and the township are coëxtensive. Of course, if section 2 is but a repetition of section 20 of the general law, it was unnecessary for the mere purpose of bringing into existence that class of townships; but there was obviously the same consideration urging that the different provisions of the other sections of the act should apply to townships created as such because their limits were co-extensive with the limits of the city, as urged, that they should apply to other townships whose limits did not extend beyond the limits of the city; and it was one way of making this

application, and liable to no constitutional objection of which we are aware, to repeat the enactment organizing townships whose limits are coëxtensive with the limits of the city, and then, in subsequent sections, embody these provisions in general terms, and make them applicable to the townships in common, whether organized pursuant to or in conformity with the provisions of one section or the other. It is never to be assumed, unless that conclusion, after considering the entire act, can not reasonably be avoided, that the legislature intended to enact a statute in contravention of the constitution; and yet if the subsequent sections of this act are not applicable to townships organized by section 20 of the general law, they are in direct violation of that clause of section 22, of article 4, of the constitution, which declares that the General Assembly shall not pass local or special laws for regulating county and township affairs, since it can admit of no dispute that these sections do regulate township affairs, and that townships organized by section 20 of the general law are in no essential feature, so far as circumstances and relations, external to the manner of their being created corporations, are concerned, different from townships created under and pursuant to section 1 of this act; and so, necessarily, a law applying to the latter townships alone, or to the latter and other townships embracing territory entirely under city government, and excluding the townships created by section 20 of the general law, must be both local and special. The words, then, "such city and town," as applicable to section 2, we hold have no reference to the date of the organization of the city and town, whether before or after the adoption of that act, but only to the fact of being a town in the manner provided by that section. If the town or township (and in this connection these terms are convertible,) was a town or township before the passage of this act by virtue of section 20 of the general law, it did not cease to be such by this

enactment, and the territorial limits bring it within the letter of the act without reference to the date of organization.

But counsel contend that the act is unconstitutional because section 5, of article 10, of the constitution, provides that the day of holding the annual township meeting shall be uniform throughout the State, while this section provides that all the town officers shall be elected at the annual charter election of the city, which, in this instance, is a different day than that provided in the general Township law for the annual township meetings. Concede that this objection be well taken, and what follows? This section is not so connected with the other sections, and their mutual dependence upon each other as conditions, considerations or compensations for each other such, as to warrant the belief "that the legislature intended them as a whole, and that if all could not be carried into effect, the residue would not have been passed independently." Upon the contrary, we think the date of the election was a matter wholly distinct and apart from the matters involved in the consideration of the other questions. It involved only a question of economy and convenience wholly unaffected by the other sections. The date of the election is neither a matter affecting the inherent merits of the other sections, nor the manner or the fact of their enforcement, and so, however obnoxious to constitutional objections section 3 may be, the other sections are not affected by those objections. Cooley's Const. Lim. (1st ed.) 177, *et seq.; Myers* v. *The People*, 67 Ill. 503. An analogous but stronger case, as against the present contention, is *The People* v. *Brown*, 11 Ill. 478, where the court held that though so much of the Township act of 1849 as held that if a majority of the votes cast (instead of a majority of all the citizens within the county entitled to vote on the question) were in favor of township organization the system should be declared adopted, was unconstitutional, still the balance of the act was valid. *The People ex rel.* v. *Kennedy et al.* 96 N. Y. (56 Sickles) 294.

See, also, to like purpose, *Franklin Co.* v. *Railroad Co.* 12 Lea, 521.   The other sections have, then, remained, assuming the objection well taken, just as if that section had never been enacted.

We may remark, to avoid misapprehension, that by an act in force July 1, 1879, it is now provided that the regular charter election for the election of city officers of any city having the same territory as an organized township, shall take place on the same day provided by law for the township election, (Public Laws of 1879, p. 69,) and that no objection is taken in this case to its constitutionality.

The objection is also urged that so much of this act as is claimed to authorize the ordinance adopted by the city, is unconstitutional, because it embraces a subject not embraced within the title of the act.   The title of the act is, "An act to authorize county boards in counties under township organization to organize certain territory situated therein as a town."   We have often held that the provision of the constitution here claimed to be violated, does not require that the title to the act shall set forth a detailed statement, or an index or abstract of its contents, but that it will be sufficient if the title be comprehensive enough to reasonably indicate the several objects which the statute assumes to effect.   When a general purpose is declared, the means by which to accomplish that purpose are presumed to be intended as necessary incidents.   See *Potwin* v. *Johnson,* 108 Ill. 78, and cases there cited; *Montclair* v. *Ramsdell,* 107 U. S. 147; *Blake* v. *The People,* 109 Ill. 504; *Larned* v. *Tiernan,* 110 id. 173.

The mode of transacting township affairs, and the selection of the instrumentalities to that end, were clearly incident to the organization of territory into townships, and such provisions as were essential to make the law uniform in its application, and thus relieve it of constitutional objections in that regard,—in other words, as were necessary to bring the townships thus organized, and other townships of the same

class or grade, under the same law, we think, also, on the authority of the principles applied in previous decisions of this court, and in decisions of other courts of last resort, were germane to the main purpose of the act,—the organization of certain territory into townships. Conceding, as we do, that this question is not entirely free from doubt, still the doubt must be solved in favor of the validity of the act, since we are not clearly satisfied that the objection is tenable.

Again, the objection is urged that the law is local or special, in that the townships affected by the act are essentially different from townships existing in territory unaffected by the act, and that it is, for that reason, unconstitutional. It will be observed that this difference is merely in the instrumentalities by and through which the general township system is enforced. The main object, evidently, is to reduce the number of officials required to carry on local government, and, to that extent, to reduce expenses.

It is assumed, and rightly, as we think, that as regards the purposes of the organization of townships and the administration of township government, there is such a difference in the conditions and relations of things within incorporated cities from those in the country, as, in material respects, makes differences in the statutes applicable to the one and to the other indispensable. Thus, the construction and repairing of roads, bridges, etc.; the regulation, restraint or prohibition of domestic animals running at large; the constructing, repairing and regulating the use of public watering places; the regulating of the planting of trees upon highways; the prevention of the creation of certain defined nuisances, etc., which are among the powers conferred upon towns by section 3, article 4, of the Township Organization law, (Rev. Stat. 1874, p. 1011, *et seq.,*) can, in the country, be done only by the corporate authorities of the townships, but in the cities these things fall entirely within the powers of the municipal government. (See sec. 1, art. 5, chap. 24, Rev. Stat. 1874,

p. 211.)    So, also, there are other powers conferred upon
towns by the Township law which have relation only to the
protection of the interests of agriculture in the country, the
subjects matter whereof are, by the mere fact of the existence
of a city, excluded from its limits.    (See section 3, article 4,
of the Township Organization law, *supra*.)    Classification,
therefore, in our opinion, is not only allowable, but, to a large
extent, inevitable, between towns lying wholly in the country
and those the entire territory of which is covered by an in-
corporated city, and we are, hence, unable to say that a law
applicable, as is this, to all townships the territory of which
does not extend beyond the limits of the territory of an incor-
porated city, is unconstitutional because local or special.    We
have held that laws are general and uniform, and hence not
obnoxious to the objection that they are local or special, when
they are general and uniform in their operation upon all in
like situation.    *The People ex rel. v. Wright*, 70 Ill. 398;
*Hawthorn et al. v. The People*, 109 id. 312.

The only remaining objection that we deem it necessary
to notice is, that the ordinance does not conform to the act.
It makes the city treasurer town collector.    The act author-
izes "the city council in such city and town to provide by
ordinance that the offices of treasurer and town collector shall
be united in the same person."    Is not that done by this
ordinance?    Inasmuch as the election district and the quali-
fication of electors are precisely the same, of what practical
consequence was it whether it was said, as here expressed,
or that the town collector should be city treasurer, or that
both names should attach at the same time, provided, only,
that the ordinance was adopted before the election, so that
the voters knew, when voting, that the person for whom they
were voting would perform, if elected, the duties of both
offices?    We think not the slightest.    The substance was,
the man elected became thereby city treasurer and town col-
lector.    All else was immaterial form.    The person elected

must possess all the qualifications prescribed for either office, and he must execute bond and qualify as required for both, or he will forfeit his office. The offices have become inseparable, and the duties and burdens of one may not be accepted and those of the other rejected.

Other objections of minor importance, at least in our estimation, have been pressed, but we deem them untenable. They have been considered, but we do not think that they demand special notice.

The writ is denied.                    *Mandamus refused.*

Mr. JUSTICE SCOTT: I do not concur in this opinion.

Mr. JUSTICE SHOPE having been unavoidably absent from the court at the argument of this cause, took no part in its determination.