## Board of Supervisors v. The People ex rel.

1. *Statutes—Right to Appoint a Poormaster.*—The city of Moline, having been organized into a town, having over 3,000 inhabitants, under Sec. 1 of the act of May 23, 1877, entitled, "An act to authorize county boards in counties under township organization to organize certain territory situated therein as a town," has the legal right to appoint the poormaster of such town, and it would seem within the spirit of the statute, that he should give a bond to the town, conditional for the faithful discharge of his duties, although there is no express provision of the statute requiring him to do so, and that the city clerk should approve it.

2.  *Statutes—Application of the Pauper Act.*—Section 18 of chapter 107, R. S., entitled "Paupers," providing that in towns containing 4,000 inhabitants, or over, the county board may, upon the written request of the supervisors, appoint an overseer of the poor, etc., applies only to ordinary towns having 4,000 inhabitants or over, and not to towns organized out of the territory of a city under Sec. 1 of the act of May 23, 1877.

3.  *Statutes—Different Provisions to be Construed Together.*—Where the provisions of different statutes pertain to the same subject and have but one aim and object in view, they must be construed together into one entire system, as if enacted into a single act, and, so far as it can reasonably be done, each provision given force and effect.

4.  *Supervisors—Power to Approve the Bond of Poormaster.*—Where a poormaster is appointed by a city council for a town, organized out of a part of the territory of the city, under the act of May 23, 1877, the duty of approving his official bond does not devolve upon the board of supervisors of the county.

**Memorandum.**—Mandamus proceedings. Error to the Circuit Court of Rock Island County; the Hon. JOHN J. GLENN, Judge, presiding. Heard in this court at the May term, 1893. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

PLAINTIFFS' BRIEF, J. T. KENWORTHY AND M. M. STURGEON, ATTORNEYS.

It was error for the court to award the peremptory writ in this case, requiring the respondents to approve the particular bond described therein. The utmost the court had the right to do was to require the respondents to approve some bond—that is, to set them in motion in the premises. Kelley v. City of Chicago, 62 Ill. 279; People v. Dental Examiners, 110 Ill. 180; People v. Mayor, 25 Wend. 680; People v. Council of Troy, 78 N. Y. 33; Moses on Mandamus, 54, 104; People v. Knickerbocker, 114 Ill. 546; People v. Hyde Park, 117 Ill. 464; State Board v. People, 123 Ill. 238; People v. Commissioners, 118 Ill. 242; People v. Trustees of Schools, 42 Ill. App. 60.

DEFENDANT'S BRIEF, BROWNING & ENTRIKIN AND J. B. OAKLEAF, ATTORNEYS.

The contention of the plaintiffs is that the two sections of

the statute in reference to the appointment of the poormaster are in direct conflict, and the section giving the city council the right to appoint is repealed by implication by the said statute giving the board of supervisors the right to appoint; while our contention is that there is no conflict between the two statutes, but both should stand.

These two statutes are not the creation of new and independent systems of township organization, but an adaptation of the general system previously in force, with modifications deemed essential to the different relations and circumstances, to territory under city organization and country towns, and these acts are therefore *in pari materia*, and both must be read and construed together as constituting one entire system, and as if enacted in a single act. The People ex rel. v. Hazelwood, 116 Ill. 319; Young et al. v. Stearns et al., 91 Ill. 221.

" In the construction of a statute, every part of it must be viewed in connection with the whole, so as to make all its parts harmonize, if practicable, and give a sensible and intelligent effect to each. It is not to be presumed that the legislature intended any part of a statute to be without meaning." 12th American Rule, Potter's Dwarris Statutes, 144.

" All statutes *in pari materia* are to be read and construed together, as if they formed parts of the same statute and were enacted at the same time." 17th American Rule, Potter's Dwarris Statutes, 145.

OPINION OF THE COURT, LACEY, J.

This case involves the question of the right to appoint a poormaster for the town of Moline, county of Rock Island, State of Illinois. The relator, Ezra L. Eastman, was appointed poormaster by the town of Moline, by its city council, and he sought to compel by mandamus, the board of supervisors of the county of Rock Island, to approve his official bond, which it had refused to do. On the 11th of July, 1892, the relator's official bond was presented to the board for approval, and on the 12th of the same month, the

said board of supervisors appointed one L. F. Kerns as poor-
master of the town of Moline and approved his bond in the
sum of $1,000, who thereupon assumed the duties of the of-
fice of poormaster of said town. On the same day the re-
lator filed his petition in the Circuit Court of the County of
Rock Island, praying for a writ of mandamus to approve his
said bond. A demurrer was sustained to his petition be-
cause the bond was not drawn with proper conditions. On
the 14th of September, the appellants, being in session, a
motion was made before them by the relator to fix the
amount of his bond as poormaster of Moline, which motion
was ruled out of order; thereupon he tendered his new bond
as poormaster in the penal sum of $1,000, with Charles F.
Hemminway and M. J. McEniry as sureties, dated April 20,
1892, which is the bond in controversy in this case, and
asked the board to approve it, but the chairman ruled the
matter out of order, because there was a poormaster in Mo-
line, appointed by the county board at the July meeting,
who had given bond which was approved by the said board.
The relator then offered to furnish bond in any sum which
the board saw fit to demand, which was refused. On No-
vember 14, 1892, the relator filed his second petition for a
writ of mandamus to compel the said board to approve the
said last mentioned bond, which is the petition in this case.
February 9, 1893, judgment of the court was entered, that
peremptory writ of mandamus issue, commanding respond-
ents to approve the last mentioned bond. The question in-
volved in this case is, which, under the law, has the right to
appoint the poormaster of the town of Moline, the city
council of the city of Moline, or the board of supervisors
of Rock Island county? A solution of this question de-
pends upon the proper construction to be given to several
sections of the statute of the township organization act,
and the pauper act. The city of Moline was organized
under section one of act, May 23, 1877, into a town, having
over 3,000 inhabitants. It was enacted by the legislature
May 23, 1877, in force July 1, 1877, as follows, to wit:

"Sec. 1. That the county board in any county under

township organization may provide that the territory embraced within any city in such county shall be organized as a town, provided such territory shall 'have a population of not less than 3,000 inhabitants, and provided that city councils in such city by resolution request such action by the county board.

"Sec. 2.   The territory of any city, now organized within the limit of any county, now under township organization, and not situated in any town, shall be deemed to be a town.

"Sec. 3.   All town officers within any town organized as aforesaid, shall be elected at the annual charter election of said city.   All general elections held in such city and town shall be held at the same voting places as the city elections, with judges and clerks appointed in like manner as for city elections."   (This section declared by Supreme Court unconstitutional, 116 Ill. 319.)

"Sec. 4.   The power vested in said town shall be vested in the city council.

"Sec. 5.   The city council in such city and town may, by ordinance, provide that the officers of city and town clerk may be united in the same person; that the officers of treasurer and town collector shall be united in the same person; that the election of highway commissioner shall be discontinued, and that the offices of supervisor and poormaster shall be separated, and the poormaster appointed by city council."   Hurd's Statute 1891, page 1416, chapter 139; sections 136, 137, 138, 139, 140.   Section No. 5 was added as an amendment to the original sections, June 18, 1883.   In force July 1, 1883.

Sec. 18, Chap. 107, entitled "Paupers," Hurd's Statute, 1891, page 1019, provides as follows:   "In counties under township organization the supervisors of the respective towns therein shall be ex-officio overseers of the poor of their towns, provided that for towns containing 4,000 inhabitants or over, upon written request of said supervisors the county board may appoint an overseer who is a resident of such town, fix his compensation and term of office, which shall not exceed the term of the said board.   The overseer

so appointed shall execute to the county an official bond in a penal sum, and with securities to be fixed and approved by the county board, conditioned for the faithful discharge of his duties, and a due application of such funds and property as shall come to his hands as such overseer."

Section 14 of the same pauper act requires the counties to support the paupers except in cases where the poor are supported by the towns, and section 15 requires the town to support the poor and indigent persons where the poor are supported by the towns as provided by law. By section 101, chapter 139, township organization act, Hurd's Statute, 1891, it is provided that "A supervisor, before he enters upon the duties of his office, is required to give an official bond to the town, conditioned for the faithful discharge of his office as supervisor, which bond is required to be approved by the town clerk and filed in his office, with such approval indorsed thereon."

The city of Moline, in March, 1879, by resolution requested the board of supervisors of Rock Island county to organize the territory embraced in said city into a town, the said city at that time and ever since having a population of over 3,000. At a special term in March, 1879, the board of supervisors organized the said territory into a town under the name of the town of Moline. On the 10th day of March, 1880, said city council, by ordinance, provided that offices of supervisor and poormaster be and were thereby separated and the poormaster appointed by the city council. The said ordinance has ever since been in force, and the city council has ever since appointed such poormaster. The said relator took and subscribed the oath as poormaster, and the city clerk gave him a certificate under his hand and seal as such poormaster, which was duly presented to the board of supervisors. There are two questions arising in this case under these various statutes. First: Has the board of supervisors the legal right to appoint the poormaster under the sections of the pauper act above quoted, or does that duty devolve upon the city of Moline? Second: Conceding that the city of Moline has the legal

right to appoint the poormaster, has the board of supervisors any duty to perform by way of fixing or approving the official bond of such poormaster.

Under section 18 of the pauper act, giving the supervisors the right to appoint the poormaster in towns containing 4,000 inhabitants or over, it would seem to be broad enough to include the town of Moline, provided it had 4,000 inhabitants or over, and provided there was no exception to this provision of the statute inferable from the various sections above quoted. All the sections of the statute pertain to the same subject and have one aim and object in view, and must be construed together, and each of the parts and provisions given force and effect so far as it can reasonably be done. In other words, these sections must be construed *in pari materia*, and the whole read together, and construed as constituting one whole entire system and as if enacted in a single act. This principle has been fully decided by the Supreme Court, in The People ex rel. v. Hazelwood, 116 Ill. 319, and the cases there cited. We are of opinion that in case of a city as that of Moline, situated with reference to the town as it is under the sections of the statute above quoted, it, having 3,000 inhabitants or over, has the legal right to appoint its poormaster, fix and approve his official bond, notwithstanding it may have over 4,000 inhabitants, and that section 18 of the pauper act only applies to ordinary towns having 4,000 inhabitants or over, not situate as the town and city of Moline are. There might be a construction placed upon the different sections quoted which would give the board of supervisors the right to appoint the poormaster for the city and town of Moline, after it reached in population the number of 4,000, leaving to the city of Moline the right to appoint the poormaster while it had the population between 3,000 and 4,000, but we think this would be an unnatural and strained construction and not warranted by the reason of the case.

The remaining question in the case is whether the board of supervisors had any power or duty to fix or approve the relator's official bond. We are inclined to think it had not.

If it had any such right it must have acquired it under section 18 of the pauper act above quoted, which allows it to appoint a poormaster in a certain grade of townships and fix the bond and approve the security, the bond in that instance being required to be executed to the county.

But that requirement and provision apparently extends to no other case. Holding as we do that that section does not apply to the city and town of Moline, which are the same, we can not see wherein there is any provision of the statute that requires the poormaster appointed by the city council of Moline to execute a bond payable to the county, or the board of supervisors to approve it. In all ordinary cases the supervisors are ex-officio poormasters and the supervisor is only required to execute an official bond to the town which is approved by the town clerk, no bond being required to be given as overseer of the poor or poormaster. In such case we suppose his bond would cover any defalcation in the performance of his duties as overseer of the poor. But in the case of the city and town of Moline, the offices of supervisor and poormaster being separated, it would seem within the spirit of the statute that the poormaster should give a bond to the town of Moline conditioned for the faithful discharge of his duties, although there is no express provision of the statute requiring him to do so; though we will not decide more than that the board of supervisors are not the proper parties to approve it. · In such case, then, the city clerk, who takes the place of the town clerk, should approve the bond. Therefore we hold that the board of supervisors had nothing to do with the case, either to appoint the poormaster or to approve the security of his official bond. There are a number of other questions raised by plaintiff in error but in the view we take of the case it is not necessary to notice them.

The court below, however, ordered a peremptory writ of mandamus compelling the board of supervisors to approve the security on the official bond of the relator tendered to it by him. We think the court erred in so doing. The judgment of the Circuit Court is therefore reversed and the cause remanded.