GLOVER v. MEINRATH *et al., Appellants.*

Division One, March 10, 1896.

1. **Constitution:** KANSAS CITY JURY LAW. The constitutionality of the act of the legislature of April 1, 1891, known as the Kansas City jury law, reaffirmed. *Dunne v. Railway Co.,* 131 Mo. 1.

2. **Negligence:** INJURY TO SERVANT: INSTRUCTIONS. In an action to recover for injuries received by plaintiff while employed as engineer in defendant's mill and in working with a machine therein, the question whether or not such machine was being used "in the manner contemplated by its manufacturer," is immaterial, and an instruction which makes the liability of defendant, or the risk assumed by plaintiff in his employment dependent on whether the machine was so used, is misleading and erroneous.

*Appeal from Jackson Circuit Court.*—HON. JAMES
GIBSON, Judge.

REVERSED AND REMANDED.

*Albert Young* for appellants.

(1) The act of the legislature under which the jury was summoned and impaneled in this cause is unconstitutional and defendants' motion to quash should have been sustained.    Laws of Missouri, 1891, p. 172; Constitution of Missouri, art. 4, sec. 53; *State v. Jackson Co.*, 89 Mo. 237; *Murnane v. St. Louis*, 27 S. W. Rep. 711.    (2) If there was any negligence in the operation or alleged changed method of operating the drier in question, it was caused by day engineer, Milks, who, under the testimony was a fellow servant of plaintiff, and for his negligence plaintiff can not recover; and therefore the demurrer to the evidence should have been sustained.    *Prima facie*, all who enter the employ of a single master are engaged in a common service and are fellow servants; the burden of proof is upon the plaintiff to show a different relationship.    *Moore v. Railroad*, 85 Mo. 588; *Schaub v. Railroad*, 106 Mo. 74; *Railroad v. Baugh*, 149 U. S. 368; *Renfro v. Railroad*, 86 Mo. 302.    (3) Instructions numbered 1, 2, 3, and 4, asked by defendants, should have been given.    The rule between master and servant is that the servant contracts that he has all necessary skill and experience for his employment and that he understands the machinery about which he is to work.    He also assumes all the risks incident to the business in which he engages and the duties he engages to perform.    *Jackson v. Railroad*, 104 Mo. 448; *Alcorn v. Railroad*, 108 Mo. 81; *Smith v. Railroad*, 69 Mo. 32; *Renfro v. Railroad*, 86 Mo. 302; *Harvey v. Gold Mining Co.*, 31 Pac. Rep. 819; *Lumber Co. v. Bethea*, 57 Ark. 76; *Foley v. Light Co.*, 24 Atl. Rep. 487.

*F. V. Kander* and *F. B. Case* for respondent.

(1) Instructions 3 and 5, given in behalf of plaintiff, correctly stated the law of the case. A servant does not assume risks of any danger arising from unsafe or defective methods of operating machinery or of machinery itself, unless he has, or may be presumed to have, knowledge or notice thereof. 14 Am. and Eng. Encyclopedia of Law, 843, and cases cited; *Schroeder v. Railroad*, 108 Mo. 322; *Gibson v. Railroad*, 46 Mo. 163, 169. (2) The servant has the right to assume that the machinery or appliances furnished by the master has been properly constructed. *Lewis v. Railroad*, 59 Mo. 495; *Porter v. Railroad*, 71 Mo. 66; *Steinhauser v. Spraul*, 114 Mo. 551. (3) "The master is no less responsible to his workman for personal injuries occasioned by a defective system of using machinery than for injuries caused by a defect in the machinery itself." *Schroeder v. Railroad*, 108 Mo. 322. (4) Instructions 1, 2, 3, and 4, asked by defendants, were modified by the court and given in form applicable to the facts in the case by instructions 1, 2, 3, and 4, given by the court of its own motion. An employee takes the risks of known dangers and no others. *Keegan v. Kavanaugh*, 62 Mo. 230; *Johnson v. Spear*, 76 Mich. 139; *Myers v. Hudson Iron Co.*, 120 Mass. 125. (5) The instructions as a whole were more favorable to appellant than the facts warranted.

ROBINSON, J.—This is an action for damages caused to plaintiff while at work for defendants at their mill as an engineer, at the trial of which plaintiff obtained a judgment for $2,000. The appeal was taken by defendants to the Kansas City court of appeals and afterward on their motion was ordered transferred to this court on the ground that the bill of

exceptions and the record in the case disclosed the fact that the constitutionality of an act of the legislature was involved.

The assignments of error made by the appellant, that will be noticed in this opinion, are "the refusal of the trial court to quash the panel of jurors called to try the case, the giving of improper instructions on behalf of the plaintiff, the refusal of proper instructions asked by defendants and the after giving of same improperly modified by the court on its own behalf." The first assignment of error, involving as it does the constitutionality of the law under which the jury that tried the case was selected and summoned is the one that alone gives this court jurisdiction, as without it, on account of the amount involved, we would be wanting in authority to hear and determine the question raised in the second assignment.

We hope that the opinion delivered in the case of *Dunne v. Cable R'y Co.*, 131 Mo. 1, and twice approvingly quoted and followed since by this court, will put at rest all further controversy as to the constitutionality of the act of February 25, 1895, providing and designating the manner of selecting petit jurors and prescribing their qualifications, in counties in this state which now have or which may hereafter contain a city of more than fifty thousand inhabitants and less than three hundred thousand inhabitants, and known in the common parlance of the Kansas City bar as the "Kansas City Jury Law," so that appeal from the trial court of that city will reach the Kansas City court of appeals or this court, according as provided by law, the question as to the constitutionality of that act being treated as a settled and determined issue. In disposing of plaintiff's first assignment of error we will go into no discussion as to the validity or constitutionality of the act further than to say that we adhere to

and reaffirm the opinion of this court in the case of *Dunne v. Cable R'y Co.*, above cited.

As previously said, this action is for personal injuries received by plaintiff while in the employ of defendants as an engineer, based upon a petition charging that defendants had and used in their mill a certain machine constructed and used for the purpose of drying corn meal and other food products manufactured by them, intended to be used and operated as a steam drier, and that same should have been heated by steam from the boiler in said mill of defendants, but that defendants negligently, carelessly, and unskillfully used and operated said drier as a hot water machine, and caused the same to be heated by hot water and steam and not by steam alone; and that by changing, using, and operating said machine as a hot water and steam drier instead of heating and using said machine with steam alone as the same was constructed and intended to be used, made it a dangerous machine as defendants well knew; and that defendants negligently and carelessly failed and neglected to inform plaintiff of the manner in which said machine was at that time operated, and of the dangerous character thereof caused by changing the method of operating and using same, and that plaintiff was ignorant of the manner in which said machine was used, and of the change made in heating same as above named; and that on the night of June 2, 1892, while in the employ of defendants as an engineer, with the duty of superintending and operating the boilers and engines used in and about defendants' mill and to repair the steam machinery used therein, he was directed by the miller in charge of and operating the milling machinery of said mill to repair the packing box around the shaft of said drier. That plaintiff supposing and believing that the drier was operated

and conducted as a steam drier, as the same was con-
structed and intended to be used, resorted to the
proper methods of cooling a steam drier, and in order
to make the said repairs loosened the nuts of the bolts
of said packing box, but that by reason of the change
in the method of heating said machine as aforesaid,
the drier being partially filled with hot water and
steam, the said hot water and steam escaped with a
violent pressure upon plaintiff, scalding and burning
him to his damage, etc.   That had said machine been
used as the same was constructed and intended, and
the same heated with steam, the said injury would and
could not have occurred.

The defendant set up by way of answer a general
denial and a plea of contributory negligence on the
part of plaintiff and his coemployees and fellow
servants.

The testimony shows that plaintiff was scalded
while attempting to repack a packing box in the steam
drier at that time being used by defendants in their
mill and heated by means of hot water and steam
instead of by steam alone as it was contemplated to be
heated by its manufacturer.   The testimony shows
that the machine was not rendered in any wise more
dangerous as a machine while in use about the mill,
but that as changed it was a perfect machine and did
better the work for which it was purchased and in-
tended to be used by defendants, than when heated
alone by steam.   The drier consisted of a cylinder
composed of a number of steam pipes closed at one
end, while the other ends are screwed into a round
hollow chamber.   This hollow chamber forms one end
of the drier and has a hollow journal cast with it on
which the cylinder revolves.   It was while attempting
to repack the packing box in which this journal was
working that the plaintiff was scalded by the hot water

issuing from the machines while he was unscrewing the nuts from the bolts that held the packing box in place.

The change in the method of heating the machine was made by the day engineer at the mill by simply inserting a stop cock or valve in the pipe that conveyed the water of condensation that would gather in the machine by the steam cooling off, so as to enable him by turning this valve to check the flow of the condensed water in the drier and hold it in the machine instead of permitting its return to the water compartment of the boilers in the basement to be reheated and returned to the machines as steam. This was done in order to reduce the temperature of the drier, so that it would not burn or scorch the meal and other food products as they were run over the machine to rid them of whatever moisture there might be in them after the process of grinding. When the machine was heated by steam alone it would become too hot and would damage the meal and other products run over it, and to correct this evil the day engineer made the change indicated above in the method of heating the machine.

Plaintiff was employed as night engineer at defendant's mill and it was his duty to look after and repack this machine whenever it should begin to leak or need attention. It was a part of his duties according to his own testimony; and of his own motion he began the work of repacking the packing box of this machine at the time he received his injury. Plaintiff testified further that when he began to repair the machine he thought it was a steam drier and that from all the connections made between the drier, and the boiler he supposed that it was heated by steam; that he had never repaired the machine before, and that he had only worked for defendants three nights before he received his injuries; that neither the defendants nor their day engineer informed him of the change that

had been made in the machine, and that as an engineer thoroughly acquainted with machinery he could see nothing to indicate that the machine was used differently from the way that it was contemplated to be used by its manufacturer; that when he noticed that the machine was dripping water, he immediately shut the steam off from the boilers, opened up the escape from the machine to an open sewer, in order that the steam and water in the machine might blow or run out; that he then waited about half an hour out of caution before he began to unloosen the bolts in order to enable him to get to the packing box that he intended to repair, and that while at work unscrewing the bolts, the hot water from the machine issued out upon him and scalded him.

Plaintiff further testified that if the machine had been heated by steam as he supposed it was, and as it was intended to be used by its manufacturer, that even though the relief or discharge pipe to the sewer were choked up (as it was afterward found to be) still by waiting the length of time he did after turning off the steam as he did, he would not have been scalded as he was, for the reason, that in that time the steam left in the machine would have cooled off, and the steam in it condensed into but a quart or so of water, and the pressure in the machine would thus have been removed so that what little water there was left in it would not have issued out with such force as to have reached him in his work of unscrewing the nuts about the packing box. But that as the machine was permitted to remain full of hot water it would cool off more slowly and be sufficiently hot after the lapse of half an hour from the time the steam was cut off from it, to scald one if it should issue out upon him.

Plaintiff also testified that if the escape or discharge pipe to the sewer had been open so that the

water or steam or whatever there was in the machine, could have escaped when he turned the escape valve from the machine to the discharge pipe, that the machine would have discharged itself of all steam or water within two or three minutes, and that in that event there would have been no danger to anyone in working about the packing box of the machine; that he did not know that the discharge pipe to the sewer was closed up until after his injury, but supposed that it was open and waited as long as he did after turning the steam off, out of an abundance of caution. That he never had any reason to examine the discharge pipe to the sewer and never did so.

Mr. Milks, the day engineer at defendant's mill, who was called as a witness for plaintiff, testified substantially as plaintiff as to the effect of heating the machine by hot water and steam, instead of by steam alone. That he employed plaintiff at defendant's request to take charge of the night shift at the mill as engineer. That he generally looked after the discharge pipe during the day shift to see that it was kept open. But that on the night of the accident it was closed up so that the steam and water from the drier could not escape into the sewer. That there was no way of telling whether the escape pipe was closed up or not, except by unscrewing it near where it connected with the machine, and lift it up out of the sewer, but that if the escape pipe was open, the machine would rid itself of all water or steam within a minute or so after the valve was turned and would then be perfectly safe to work with or about.

As will be observed, the only real complaint made by plaintiff against the drier as used by defendant was, that it would not cool off as rapidly when heated by hot water and steam, as when heated by steam alone, and that not being informed of the change in the

method of heating the machine, and thinking that it was heated by steam alone, as contemplated by its manufacturers, and as its connections with the boiler would indicate, so far as he observed, he went to work to repair it after waiting a sufficient time, after cutting off the steam from the boiler to the machine, to have guaranteed his perfect safety if it had been heated by steam alone, and that he was injured because the machine was in fact heated by hot water, that retained its heat longer than it would if heated by steam, and issued out upon him in its hot and scalding condition, when he attempted to unloosen the bolts to enable him to get to the packing box.

Upon the issues and with the facts as above indicated, the court on behalf of plaintiff gave the following instructions numbered 3 and 5 against defendant's objection.    Also on its own motion gave instruction numbered 1, and refused to give instruction numbered 2 asked by defendants:

"3.    If the jury shall believe from the evidence that the plaintiff while in the employ of the defendants as engineer, and in the line of his duty in and about the business of defendants, received the injury complained of about the second day of June, 1892, *and that said injury resulted from the use by defendants of the steam heater in a manner different and more dangerous than the one for which the same was constructed and intended to be used,* and which might have been prevented by ordinary care and caution on the part of the defendants, that defendants knew of such increased danger, or might have known it by the exercise of reasonable care and diligence, then you will find for the plaintiff, if you believe from the evidence that he was exercising ordinary care and prudence and did not know of the change in the use of said machinery and of the increased danger caused by such change."

"5. If the jury believe from the evidence that plaintiff by contract entered into the employ of defendants as an engineer to do such work as was required of him as an engineer in their factory, then the law presumes that in accepting such work he only assumed the ordinary risks or danger of such employment, *when the steam drier in question was used in the manner contemplated by its manufacturer, and did not assume or contract with reference to any risk or danger arising or resulting from the change made in such use and method of heating the steam drier used by the defendants* unless he, plaintiff, knew of the change made in the method of using and heating the said drier, or might have known of it by the exercise of ordinary care."

"1. The jury are instructed that when the plaintiff entered into the employment of defendants as an engineer in their hominy mill, he undertook to furnish and possess all the necessary skill and experience required by such position, and also that he understood the nature, character, and method of operating the machinery about which he was to work, including the drier in question, *when used in the manner contemplated by its manufacturer*, and if you find from the evidence that he failed to have or possess such experience, skill, or ability as required to operate such machine *when used in the manner above indicated*, or to fully understand the nature, character, and working of the drier in question, *when used in the manner above indicated*, and by reason of the want of such skill, experience, ability, and knowledge of said drier, he was injured, then your verdict will be for the defendants."

"2. The jury are instructed that when plaintiff entered into the employment of defendants as an engineer in their hominy mill, that he undertook to furnish and possess all the necessary skill and experience required by such position, and also that he understood

the nature, character, and method of operating the machinery about which he was to work, including the drier in question, and if you find from the evidence that he failed to have or possess such experience, skill, or ability as required to operate said machine, or fully understand the nature, character, and working of the drier in question, and by reason of the want or exercise of such skill, experience, ability, and knowledge of said drier, he was injured, then your verdict will be for the defendants.''

For the giving and refusing of which, defendants' chief assignment of error is made in this appeal.

From these instructions it will be seen that the view of the trial court was that when the plaintiff entered into the employment of defendants as an engineer to take charge of the night shift at their mill, he did not assume or undertake to run all the ordinary risks and hazards of such position, including his own negligence or unskillfulness, and that of his fellow servants in the same line of employment as well as all risks from the use of the machinery as used in the business about which he was engaged; but that plaintiff only assumed the risk of his employment, provided the drier used by defendants at their mill was used in the manner contemplated by its manufacturer; that he did not assume any risk or danger arising from the change made in said machine, and the method of heating same as used by defendants, unless he knew of the change or might have known of it by the exercise of ordinary care.

The real question for solution was not as to the way, or by what method the drier in controversy was to be heated in the contemplation of its manufacturer; but, was it a machine that with reasonable care and caution could be used without danger by defendants at the place, and in the manner that it was used. Nor

was it a question as to whether it might or might not have been operated by a method that was safer than as used by defendants. The defendants were not bound to provide the safest machinery in the market, nor were they required to resort to the safest methods for its operations. If the machine as used was such as was in ordinary use by persons in like business, and such as with ordinary care could be used without danger at the place, for the purpose, and by the method employed by defendants, the requirements of the law have been complied with by them, and they will not be held answerable for the injury, even though other machinery or that machine operated by a different method might have been much safer and less liable to inflict an injury to plaintiff.

The defendant was not bound to furnish the most approved or the best machinery for the work to be accomplished. His duty is only to use ordinary care that such as he does supply is reasonably safe, and suitable for the purposes to which it is put. There is more risk generally in the operation of a mill by steam than by water. There is also more risk in the process of converting grain to meal or flour, by the process of the fast revolving burr, than by the ancient use of the mortar, but no legal ground of negligence is chargeable or inferable by reason of the substitution of the fast revolving burr for the mortar, or for the substitution of the more dangerous power of steam, for the gentle and regular flow of water power.

So the substitution of hot water for steam as a means of heating to the proper temperature the drier, used by defendants, would not be grounds alone for imputing to defendants negligence even if by so doing the machine was rendered more dangerous, nor would it relieve defendants of the additional risk incident to the change of method in the heating of the machine he

saw before him when he entered the mill, unless the machine was so deceptively changed, and that plaintiff as an ordinary, competent, and prudent engineer could not by reasonable care on his part have observed the change, and that the machine from its general use and appearance and as connected with the boiler in the basement at the mill would indicate that it was operated in a manner different from the way that it was used on the occasion of the injury.    The use as a foot mop at defendants' mill door of fabrics manufactured for the headwear of royalty would not increase or affect their liability for an injury to their engineer that might stumble over same in coming to or going from the mill, provided the material as used and placed at the mill door was reasonably safe and suitable for the purposes to which it was put.    The contemplation of the manufacturer, the sting to his pride in the desecration of the use of his handiwork are matters of no concern to the triers of facts in cases of this character where negligence in the use or manner of use of the article is involved.

When the plaintiff entered the service as engineer at defendants' mill he assumed to undertake the work he contracted to perform, and to take all the ordinary risks that were incident to that employment, among them the repairing of the drier at which he was injured. When he undertook the work, his engagement contemplated that he had the necessary skill and experience to perform that service properly; that he understood the manner of handling that particular machine he saw in use at the time he entered work at the mill (unless deceptively changed in the manner above designated), and not that he could handle the machine properly if operated after the method contemplated by its builder. And an instruction that made the contemplated use of a machine by its manufacturer an issue in a case like

this can never be otherwise than misleading and hurtful to the defendant. The judgment of the trial court, for the above reasons, will be reversed and the cause remanded for a new trial. MACFARLANE, J., concurs, BARCLAY, J., concurs in the result, and BRACE, C. J., dissents.