Mr. Chief Justice Hemphill
delivered the opinion of the court.
The question presented by the record is, whether on the dissolution of the injunction the court had lawful authority to render summary judgment against the sureties in the bond on which the writ of injunction was issued, and this involves two considerations:
1st. Whether the court has authority in any Case to render judgment without nótiee to the parties on trial by jury, ón *252 bonds declared by statute to have on tbeir forfeiture the force and effect of judgment; and
2d. Whether such judgment should have been rendered on the bond given by the plaintiffs in error, for the purpose of obtaining the injunction.
This judgment was rendered before the organization of the ■state government, and it is contended that the statutory provision of 1841, authorizing summary judgments on injunction bonds, is void, as being in derogation of the rights secured by the seventh, ninth and eleventh sections of the declaration of rights in the constitution of the republic.
It will not be necessary for the determination of this question to enter into any critical examination of these provisions, or to ascertain with precision the exact scope and meaning, or the extent of the rights thereby secured. Eor the purposes of this investigation we might admit that the common law of England, instead of the laws of Spain, was the basis of our jurisprudence, and give to the terms the signification in which they are generally understood in the constitutions, charters and statutes of countries or states governed by the common law.
Does the “ due course of the law of the land ” render unconstitutional all statutes authorizing summary judgments without notice and the intervention of the trial by jury?
The terms “ laws of the land ” have been often construed, and somewhat variously defined.
When first used in the magna charta of the kings of England, they probably meant the established law of the kingdom, in opposition to the civil or Roman law, which was about being introduced into the land to the exclusion of the former laws of the country.
They are now, in their most usual acceptation, regarded as general public laws, binding all the members of the community under similar circumstances, and not partial or private laws, affecting the rights of private individuals, or classes of individuals. 2 Yerg. 602, 270.
Whatever may be the meaning of the terms “ laws of the land,” or “ due course of the law of the land,” they have never been held to enjoin in all cases a trial by jury as a requisite *253 indispensable to the validity of a judgment. That a party should have notice and an opportunity of being heard in his defense, and the right of trying disputed facts by a jury, are cardinal principles of the common law; but there are many exceptions in which one or two of these privileges were never enjoined, or may be regarded as renounced by the defendant.
A court does not intervene in the rendition of judgment by default, or on confession of the party, or on demurrer, nor in cases of contempt. Persons accused of high crimes and misdemeanors are, without a jury, imprisoned for safe custody; and under the common law of England, all causes in the courts of equity and admiralty, in courts military and ecclesiastical, are determined without the intervention of a jury.
Tinder the class of exceptions to the rule in relation to notice, may be ranked cases under the attachment laws and other laws notifying parties by publication, which by legal fiction operates as an actual notice; also summary proceedings against delinquent taxpayers and in confiscations of the property of absentee alien enemies, and in other cases of the like description. 2 McCord, 55; Peck (Tenn.), 448; 1 Haywood, 49.
In many of the states summary judgments are authorized by statutes on bonds given in judicial proceedings; and such laws have not been held to contravene the guarantees of their constitutions. 3 Stewart, 227; Minor (Ala.), 27.
The parties to this bond were cognizant of the statutory provision declaring such bonds on forfeiture to have the force and effect of a judgment, and having virtually renounced their right to notice and trial by jury, and no law or principle prohibiting such renunciation, the summary judgment rendered in the case cannot be impeached for the want of either. The law regards them in effect as having become parties to the record, and that in legal contemplation they are notified of all proceedings subsequent to their execution of the bond. But the obligors in statutory bonds declared by statute to have the force and effect of a judgment are not in point of fact precluded from redress or the benefit of trial by jury.
The 18th section of the statute of limitation, Laws of 1841,-p. 168, provides that the obligors in all such bonds shall have *254 one year next after the forfeiture of the same to move to quash the bond, and to have any issues tried by a jury which in a regular action on such bond might properly defeat or modify a recovery thereon against such obligo]* or obligors.
It is very questionable whether this provision will not be productive of all those vexations and delays which the summary proceedings are designed to avoid. It removes, however, the objection of a want of a jury trial, or other defense, as these are accorded to the defendant.
Having shown that summary judgments in bonds declared by law to have, on forfeiture, the force and effect of judgments, are not in derogation of rights secured by the constitution, we will proceed to inquire whether there was error in the judgment of the court below on the bonds presented in this record. The provision of law under which this bond was given is found in the fifth section of an act to regulate the granting and trial of injunctions, etc., Laws of 1841, p. 82, and requires the complainant to enter into bonds with sufficient security before the clerk of the court whence the injunction issues for the payment into court of the sum complained of, and all costs upon the dissolution of the injunction.
The condition of the bond is not very precisely defined, but sufficiently so to instruct the officer taking the bond in the discharge of his duty.
The bond in this record, after reciting that a writ of injunction has been issued (and which recital, if construed literally, would show that the injunction had been granted in Harris and not in Houston county, whence it really did emanate), proceeds to express the conditions, as follows: “Should the said circuit court set aside the above named judgment, then this obligation to be void in law; but should the court award the judgment for the whole amount or more, or confirm the former judgment, then this obligation to be and remain in full force and effect in law.”
On comparing these stipulations with the conditions imposed by the statute, there will be found a great dissimilarity in their features.
By the statute the obligors should covenant that on the dis *255 solution of the injunction they will pay the sum complained of and all costs; and on the performance of such condition the bond becomes void of course. But the conditions of this bond .are, that it shall be void on the enjoined .judgment being set aside, or shall be valid and have full effect in law in case “ the •court should award the judgment for the whole amount or more, or confirm the former judgment.”
The statute provides for execution being taken out against the obligors on the dissolution of the injunction, whether this be done by final or interlocutory decree. The stipulation of the bond is in relation to and dependent on, alone, the action •of the court on the final hearing of the cause.
If the injunction in this case had been dissolved by an interlocutory decree, and the petition continued over for further hearing, execution could not have issued against the obligors as provided for by the statute, for they stipulate only to be bound in case the court should confirm the former or award a •still higher judgment. In this respect the condition is not so •onerous as the one required by the statute; and the contingency on which the obligation arises is not the same. By •statute this depends on the dissolution of the injunction — by the bond on the final decision of the cause.
In this cause, however, the decree which dismissed the injunction was a final disposition of the case — and the contingency having arisen which fixed the liability of the obligors by their own stipulations, it might be urged that they cannot now •object to conditions favorable to themselves, as invalidating the bond.
There is much force in this view, and we are inclined to the -opinion that although the defendants below might on this ground have objected to the bond, yet it could not avail the •obligors, and especially after the contingency has arisen on which the forfeiture depends.
But it is urged by the obligors that the condition in another respect is a material departure from the statute. For by the .statute, the bond on the dissolution of the injunction can be discharged by payment of the sum complained of, and the •costs; but by the stipulations of this bond, the obligors are *256 deprived of tbis privilege, and tbeir liability becomes fixed for the full penalty of the obligation; and this liability arises not only on the dissolution of the injunction and the confirmation of the former judgment, but is equally operative should a higher judgment be awarded.
There is in fact scarcely a trait of resemblance between the-conditions of the bond and those enjoined by the law.
The obligation is not only not made void by the payment of the former judgment and costs, but even if a higher judgment should be awarded, the liability of the obligors still continues for the whole amount of the penalty, and cannot be satisfied by discharging the amount of even the increased judgment.
They would be liable, for instance, on this bond, although they are not made so by the statute, for the additional damages-assessed in cages of delay.
The general rule on the subject of statutory bonds is, that when directed tobe made in a particular mode, that mode must be pursued. 1 S. C. 461.
This rule is subject to modifications, and it is laid down that to render a bond void for want of conformity to a statute, it must be made so by express enactment, or must be intended as a fraud on the obligors by color of law by an evasion of the statute. Treasurers v. Bates, 2 Bailey, 376; W. S. v. Tingey, 5 Pet. 129; W. S. v. Bradley, 10 id. 343; W. S. v. Linn, 15 id. 290; Speake et al. v. United States, 9 Cranch, 28; 3 Cond. 244.
The construction of involuntary bonds, or those taken under color of office, or of the law, is also more rigorous than of bonds taken voluntarily, and they are required in form and substance to have a more exact conformity to the statute.
It is not necessary, however, to the validity of any bond that the terms of the statute should be literally pursued. An essential conformity is all that can be required. On examination of such of the adjudged cases as have been accessible, where summary judgments were rendered or moved for on statutory bonds, it appears that they were entered on such bonds only as in their conditions pursued substantially the requisitions-of the statute. These obligations, in all the cases exam *257 ined, differ from that of the plaintiffs in error in this, that the-stipulations were for only some of the conditions enjoined by the statute, whereas the covenants here are more onerous, than those required by the law.
"Where the stipulations have been only for a portion of the requirements of the statute, as for instance for the payment of’ costs when the condition should have been for the payment of the decree'of the court and of all costs, judgment has been entered against the parties for the costs only. And these summary judgments have been placed on the ground that the sureties are liable to such judgment, by virtue of their express undertaking to perform certain conditions enjoined by statute; and where their undertaking is in conformity with the statute, then in virtue of that conformity and of their express-agreement they become liable to the judgment authorized by the law. 2 Yerg. 83-321; 8 Ala. 286; 4 id. 315; 5 Yerg. 188,. 296; 4 id. 198, 496; 7 id. 106; 1U. S. Dig. (tit. Appeal) 180.
The bond in this case departs too essentially from the requisites of the obligation as prescribed by the statute, to-authorize the rendition of a summary judgment, which can only be done on bonds substantially conforming to the law.
We are of opinion, therefore, that the judgment of the court below should be reversed as against the sureties, and affirmed as against Joseph Jones, the principal, and it is accordingly so ordered.