## Bob Smith v. The State.

### No. 3920.     Decided June 20, 1908.

**1.—Murder—Jury and Jury Law—Jury Wheel—Constitutional Law—Local and General Law.**

The Act of the Thirtieth Legislature p. 269, relating to the selecting of juries in counties with cities of certain population, does not violate section 56, article 3 of the Constitution of Texas, and is not a local or special law.

**2.—Same—Enabling Clause—Classification—Legislative Discretion.**

The Legislature in passing the Act of the Thirtieth Legislature p. 269 had the right and discretion in using its own basis of classification of the counties to be included in the scope of said act, and it is immaterial that said act contains no enabling clause or provision for counties having the requisite population thereafter to come within its provisions; this was a matter of legislative and political policy addressed to the discretion of the Legislature.

**3.—Same—Case Stated—General Law.**

The Act of the Thirtieth Legislature p. 269, relating to the selecting of juries in counties with cities of certain population, and the organization of juries by drawing their names from a wheel, etc., is constitutional, and is a general law applicable to all persons within its provisions; and the fact that it does not have a clause authorizing other cities to come within its provisions does not render it invalid; nor does the fact that other portions of the jury law applying to the rest of the State differ from said act.—Davidson, Presiding Judge, dissenting.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. W. W. Nelms.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*A. S. Baskett,* for appellant.—The Act of the Thirtieth Legislature under which this venire was drawn is a special and local law, and is therefore unconstitutional and void, and the venire drawn thereunder is not drawn according to the forms of law; is illegally drawn and is void; and the jury drawn therefrom is illegal, and this appellant was deprived of a trial by a legally constituted and drawn jury. Act of Thirtieth Legislature, p. 269, et seq.; Constitution of Texas, art. 3, sec. 56; Lewis Sutherland on Statutory Construction, vol. 1, secs. 200-1-2, and sec. 127; 8 Current

Law, pp. 1979 and 1980 and notes; Cooley Const. Lim., 6th ed., 604, note 2; Cooley Const. Law, 153, note 4.

The following cases hold that the respective statutes reviewed are local and special, and therefore void, on the ground that said statutes are not prospective in their application, and can not be applied to other things of like class thereafter coming within the terms of classification: Murnane v. City of St. Louis (Mo.), 27 S. W., 711; State v. Herrmann (Mo.), 75 Mo., 40; State v. Justices of County Court (Mo.), 1 S. W. Rep., 307; City of Topeka v. Gillett (Kan.), 4 Pac. Rep., 800; Rambo v. Larrabee (Kan.), 73 Pac. Rep., 915; 67 Kan., 634; State v. Scott (Neb.), 100 N. W. Rep., 812; Sutton v. State (Tenn.), 33 L. R. A., 589; Dickinson v. Board of Freeholders (N. J.), 60 Atl. Rep., 220; 71 N. J. L., 589; Dickinson v. Rippe (N. J.), 58 Atl. Rep., 182; 71 N. J. L., 596; Hibbard v. State (Ohio), 65 Ohio St., 574; State v. Yates (Ohio), 66 Ohio St., 546; 64 N. E. Rep., 570; State v. Garver (Ohio), 66 Ohio St., 555; 64 N. E. Rep., 573; Simpson v. Board of Pub. Works of Cincinnati (Ohio), 6 Ohio Cir. Court, 430.

The following cases clearly recognize the test applied in the foregoing cases, but sustain the statutes there under consideration solely on the ground that they are prospective in application and that all things of the kind classified that may thereafter come within the terms of classification could be brought under the provisions of the law.  Clark v. Finley (Tex.), 54 S. W. Rep., 343; Green v. State (Tex.), 15 Texas Court Rep., 432; Dunne v. Ry. Co. (Mo.), 32 S. W. Rep., 641; State v. Wofford (Mo.), 25 S. W. Rep., 851; Ex parte Loving (Mo.), 77 S. W. Rep., 508; State v. Ames (Minn.), 91 Minn., 365; 98 N. W. Rep., 190; Merrell v. City of Toledo (Ohio), 6 Ohio Cir. Court, 430.

There are a great many other decisions, from at least a third of the States of the Union, which have already been cited to this court in other cases, holding to the same test, that we deem it unnecessary to further cite here.

The rule of construction, stated generally, is "Statutes that relate to things as a class are general, while statutes that relate to things of a class are special." That rule seems to have no exceptions, and is adopted by all the courts. It is the rule set forth in the Clark-Finley case involving the Texas Fee Bill. Yet, it has been stated in more specific terms in the Sutton case cited above, which more specific statement of the rule is without an exception, as far as I can find, and has been adopted by at least a third of the States and is recognized in the Clark-Finley case, which is stated in the Sutton case as follows: "Legislation to be constitutional and valid must possess each of two indispensable qualities. First, it must be so framed as to extend to and embrace equally all persons who are or who may be in like situation and circumstance. Secondly, the classification must be natural and reasonable, not arbitrary and capricious."

In every case where the law under consideration possessed both of said indispensable qualities, the law has been upheld; where either one has been lacking, the law has uniformly been held bad. The pharmacy law under review in the Green case above specifically provides that all towns and cities thereafter coming within the classification shall be controlled by the law. In passing on the fee bill, with reference to the question of its being a local law, in the Clark-Finley case, the Supreme Court of Texas say after determining that the classification is a proper one, "Besides, the territory is not fixed, but is subject to change according to the increase or decrease of the respective counties as may appear by the vote." The rule above stated is recognized and applied in both the Texas cases cited. Now, what is the classification the Legislature intended in this case? · Was it the intent to group into one class the counties that contained a city or cities of twenty thousand population? In other words, was it intended that the characteristic quality of the classification should be the bringing together in one town of as many as twenty thousand inhabitants; the conditions of a congested population? Evidently that was the purpose. If so, it fails of the first indispensable quality named, in that it makes no provision by which other counties that may thereafter be in like situation and circumstance may be brought within its terms. Or, was it intended to group into a class only those seven counties that had, seven years prior to the enactment attained a certain degree of development by acquiring cities of certain population by a certain fixed date, then the classification is not reasonable, and the statute lacks the second indispensable quality mentioned above, and must fail. In either event, judged by the standard of the law as recognized by all the courts of the States and the Federal Courts, the statute under consideration is a local and special law and void. State v. Cooley (Minn.), 58 N. W., 150; Duluth Banking Co. v. Koon (Minn.), 84 N. W., 335; Johnson v. City of Milwaukee (Wis.), 60 N. W., 270; Boyd v. City of Milwaukee (Wis.), 66 N. W., 603; Burnham v. City of Milwaukee (Wis.), 73 N. W., 1018; Nichols v. Walter (Minn.), 33 N. W., 800; State v. Ritt (Minn.), 79 N. W., 533.

*F. J. McCord,* Assistant Attorney-General. for the State.

BROOKS, Judge.—Appellant was convicted of murder in the first degree, and his punishment assessed at death.

There is no statement of facts in the record. In the absence of a statement of facts none of the bills of exception can be considered save and except bill of exceptions No. 1. This bill presents the constitutionality of the law authorizing the organization of juries by drawing their names from a wheel, which law was passed by the Thirtieth Legislature, appellant insisting that said law is a local or special law. However, in deference to the fact that this question

is presented to this court for adjudication in various cases, we will state what we deem all of the objections to said law as urged in each of the cases in passing upon the validity thereof in this case.

The following are the objections to the constitutionality of said act: "1. Said Act of the Thirtieth Legislature under which same was drawn is unconstitutional and void. The ground of said motion in support of the unconstitutionality of said law being, in substance, as follows: 2. That said Act of the Legislature was a special law, and violative of section 56, article 3, of the Constitution, which inhibits the enactment of any local or special law touching the summoning or empaneling of grand and petit jurors. 3. That said law is unconstitutional, in that the names of jurors for jury duty are listed for a period of two years, and excludes from jury duty all other qualified jurors who may become of age, or acquire the right to serve upon the jury, and denies to the litigant the right to select his triors from the qualified jurors of the county and further exempts from jury duty in capital cases all qualified jurors, who have served as much as four days within said two years provided by said law. 4. That said law is further unconstitutional, in that it is discriminatory, and made applicable only to counties having cities aggregating twenty thousand in population according to the census of 1900; and thereby limits and restricts the operation of said law to counties of a class, and excludes from the operation of said law counties as a class that may hereafter or now have cities aggregating twenty thousand in population. Said law limits its operation to said counties possessing said qualifications named, and the census of 1900 excludes all others and applies to them a different law. * * * 5. Said law is further unconstitutional, in that it repeals the existing jury law as to such counties having cities aggregating twenty thousand population under the census of 1900, and otherwise leaves that law operative in all other counties. That said partial repeal is unconstitutional and void, and further, said law revives the repealed law under the contingencies provided in said act; and further, under said act delegates to the judge within said counties where said law is operative, the discriminatory power under the conditions in said law named, to suspend the Act of the Thirtieth Legislature and revive the old law as to such judge or court; and said law is violative of section 56, article 3 of the Constitution, and section 28 of the bill of rights. 6. That said act is not in accordance with due process of the law of the land, and is violative of section 19 of the bill of rights. 7. That said law is not equal and uniform, and is discriminatory, and is violative of the Constitution of the United States in section 1, article 4, thereof."

To support appellant's contention under the above grounds, to quash the venire, he cites us to section 56, article 3 of the Constitution, which provides: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special

law authorizing. 'the summoning or empaneling of grand- or petit juries.'" Section 56 of article 3 of the Constitution of this State reads as follows: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing—First, the creation, extension or impairing of liens; regulating the affairs of counties, cities, towns, wards or school districts," etc., and then, among other things, "summoning or impaneling grand or petit juries." Various other matters and things are enumerated, and the Legislature inhibited from passing any special or local law applicable to any of said things. Then immediately follows this clause: "And in all cases where a general law can be made applicable, no local or special law shall be enacted." Then section 56, article 3 of the Constitution, reads as follows: "No local or special law shall be passed, unless notice of the intention to apply therefor, shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the Legislature of such bill and in the manner to be provided by law. The evidence of such notice having been published shall be exhibited in the Legislature before such act shall be passed."

Under this last cited article of the Constitution, various special laws have been passed. It will be noticed from the terms of the last cited section, that the same to a large extent defines what a local or special law is, in that it stipulates that notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated. If one, therefore, proposes to legislate on a matter or particular thing, then it is, under the terms of this section of the Constitution, a local or special law; but if the legislation applies equally to all persons within the territorial limits describing it, it becomes a general as contradistinguished from a special law. Cordova v. State, 6 Texas Crim. App., 208; Davis v. State, 2 Texas Crim. App., 430. In the case of Lastro v. State, 3 Texas Crim. App., 363, this court held that the stock law of 1876 was not a local law, because it exempted many counties. Nor is an act changing and fixing the term of the district courts a local law. See Cordova v. State, supra. In the case of Cox v. State, 8 Texas Crim. App., 255, and others, the insistence was made that an act prescribing the time for holding the district court in the 22d judicial district was unconstitutional on the ground that same is a local law and not a general law. After quoting from the case of Orr v. Rhine, in 45 Texas, 345, this court then proceeds to discuss the question in the following language: "Turning to the Constitution, we find enumerated in the fifty-sixth section of article 3 the subjects upon which the Legislature is restricted from passing any local or special laws, and laws changing the times of and terms for holding courts are not mentioned amongst the subjects therein

prohibited. If such laws are at all embraced in that section, it can only be under the general language of the last paragraph, where it is declared . that, 'in all other cases where a general law can be made applicable no local or special law shall be enacted.' Section 56 of article 3 provides for and prescribes the rules to be observed and the forms necessary to be followed in all cases where local or special laws are desired, and their passage is expressly prohibited unless these forms are pursued. We take it that this latter section (56) relates more especially to that class of legislation which seeks the adjudication of private matters, in which the general public is not supposed to be concerned. Mr. Bouvier defines such acts to be 'those which operate only upon particular persons and private concerns,' whilst he defines general or public acts to be 'those which bind the whole community.' 'Of these,' he says, 'the courts take judicial cognizance.' To our minds it is ·evident the framers of our Constitution intended by the use of the phrase 'general act,' not that such acts should be general to the extent that they should have a uniform operation throughout the State, but simply that in its nature, character and passage, such law could be enacted, as any general law might be, without going through the forms and complying with the requisites prescribed for local or special laws by the fifty-sixth section of article 3. To illustrate the idea: As we have seen, the seventh section of article 5 expressly says, 'the Legislature shall have power, by a general act, to authorize the holding of special terms of the District Court in any county for the dispatch of business.' A special term for such purpose in but one county could not, in the nature of things, have a uniform operation throughout the State; and it would be an absurdity to hold that it was necessary in such a case, or could ever have been intended, that the general act by which such a purpose or object might be accomplished should include and embrace within the range and scope of its provisions the one hundred and fifty or two hundred other counties in the State that could have no possible interest in the subject-matter. Technically speaking, an act to hold a special term in a particular county would appear to be both a special. and a local law. Doubtless the intention was that in the passage of such an act, the same forms were to be observed · as in any other ordinary general act, as contra-distinguished from those essential to the validity of local or special laws. Any other construction, it seems to us, would make the expression 'general act' not only contradictory of the provision, but unintelligible in its meaning." Further along in said opinion, it is stated, that "A general law is one whose operation is equal in its effect upon all persons or things upon which the law is designed to operate at all. All laws operate upon persons or things. Are we, then, to understand that a general law is only one which operates upon all persons or upon all things? If so, it is obvious that our general laws are very few, if indeed there are any of that class. Obviously, such can not

be the meaning of the words 'of a general nature' as here used. The word 'general' comes from 'genus' and relates to a whole genus or kind; or, in other words, to a whole class or order. Hence a law which affects a class of persons or things, less than all, may be a general law," citing Brooker v. Hyde, 37 Cal., 366. Then the court goes on and holds that the act providing for five annual terms in Bexar County was intended to form part of the general machinery to be used in the administration of the laws of the State, affecting equally the whole citizenship of the State which came within its range; and being such, it can not be considered either special or local in the view contemplated by the Constitution, citing, among other cases, the case of Bohl v. State, 3 Texas Crim. App., 685.

In the case of Clark v. Finley, 54 S. W. Rep., 343, Chief Justice Gaines in delivering the opinion of the court, says: "A law is not special because it does not apply to all persons or things alike. Indeed, most of our laws apply to some one or more classes of persons or of things and exclude all others. Such are laws as to the rights of infants, married women, corporations, carriers, etc. Indeed, it is perhaps the exception when a statute is found which applies to every person or thing alike. Hence it can not be that the statute under consideration is special merely because it is made to operate in some counties of the State and not in others. The definition of a general law, as distinguished from a special law, given by the Supreme Court of Pennsylvania in the case of Wheeler v. Philadelphia, 77 Pa. St., 338, and approved by the Supreme Court of Missouri, is perhaps as accurate as any that has been given. State v. Tolle, 71 Mo., 645. The court in the former case say: 'Without entering at large upon the discussion of what is here meant by a "local or special law," it is sufficient to say that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition.' The law in question is applicable to every county of the designated class. Now, we do not propose to be led off into any extended discussion as to what is a proper class for the application of a general law. The tendency of the recent decisions upon the subject, as it seems to us, is to drift into refinements that are rather more specious than profitable. It is said in some of the cases that the classification must be reasonable; in others, that it must not be unreasonable or arbitrary, etc. If it is meant by this that the Legislature can not evade the prohibition of the Constitution as to special laws by making a law applicable to a pretended class, which is, in fact, no class, we concur in the proposition. Such was the law passed upon in the case of Com. v. Patton, 88 Pa. St., 258. That statute was applicable to all counties in which there was a population of more than 60,000, and an incorporated city with a population exceeding 8,000, 'situate at a distance from the county seat of more than twenty-

seven miles by the usually traveled public road.' There was but one city in the State which came within the pretended class. The court held this a covert attempt at special legislation, and that the act was a nullity. * * * To what class or classes of persons or things a statute should apply is, as a general rule, a legislative question. When the intent of the Legislature is clear, the policy of the law is a matter which does not concern the courts. A Legislature may reach the conclusion that the compensation of certain officers in certain counties of the State is excessive, while in others it is not more than enough. By the reduction of the fees of office throughout the State they may correct the evil in those in which the compensation is too great, but they would probably inflict a greater evil by making the compensation too small in all the others. In such a case it becomes necessary to make the law applicable to some, and not to all. There must be a classification. That classification may be either by population or by taxable values. One Legislature might do, as the Legislature of Texas did, make the classification by population; another, as was done by the Legislature of Arizona, might make the taxable values of the respective counties the basis of the classification. Shall the courts inquire which is correct? Can they say that the work of an officer is not, in some degree, proportionate to the population of his county? On the other hand, can they say that, the more the property of a county, the more the crime? To ask these questions is to make it apparent that they are questions of policy, determinable by the political department of the government, and not questions the determination of which by the Legislature is subject to review by the courts. There-fore, should we adopt the rule that, in order to make an act a general law, the classification adopted should be reasonable, we should still be constrained to hold the statute in question a general law, and valid, under our Constitution; for we can not say that the classification is unreasonable. It may be, as urged in the argument, that there are counties in the class to which the law is made applicable, the population of which very slightly exceeds that of other counties which are without it, and that it seems unreasonable to make a discrimination upon so slight a difference. To this the answer is, the line must be drawn somewhere, and that a similar difficulty would probably result if the classification were made upon any other basis. Exact equality in such matters, however desirable, is practically unattainable."

The jury law in this State provides that same shall apply only to counties having cities aggregating twenty thousand in population according to the census of 1900. This is nothing but a rational classification warranted by the Constitution, and is not a local or special law within the contemplation of the constitutional clause under consideration. The only difference between the jury law under

consideration and the fee bill that was passed on in the Clark v. Finley case, supra, is the fact that the jury law makes no provision for counties having the requisite population thereafter to come within its provisions, whereas the fee bill does, but a careful perusal of the Clark v. Finley case, will show that the court did not attempt to say nor do they intimate, that the opinion of the court in that case was based, as appellant insists, upon the clause authorizing other counties each recurring four years to come within its provisions. In fact, to have so held would have been non sequitur. That is to say, there would have been no rational reason for holding that the fee bill was a general law and not a special law, because it provided that other counties might come within its provisions each recurring four years. This provision would make it no less a general law, and no more a special law. If appellant's insistence in this case is correct, then the Legislature can not name a classification and pass a general law that would be constitutional at all. Suppose the jury law had provided that a county having a population of twenty thousand according to the census of 1900 should be under its provisions, and counties that thereafter according to each recurring census having a city of said population should be within its provisions, then we would have had this condition: For ten years many counties, or some counties at least, would have a city of said population before the expiration of the ten years, and yet said counties would not be within the terms of the jury law. The Legislature had a right to use its own yard-stick, its own basis for classification, and as indicated in the Clark v. Finley case, supra, it is a matter of legislative and not of judicial discretion as to what the classification shall be. If we were to assume to pass on this character of question, we would be usurping the legislative discretion in order to render invalid a statute. The Legislature desired to fix a special mode of selecting juries in certain cities. In order to do so they had to classify the cities on some basis. We are not apprised of but two bases upon which they could predicate the classification, either the taxable value of the city or the number of people that live within it, and the mere fact that they did not provide that cities hereafter that have said population may come within its provisions, is a matter of legislative policy that does not in any degree affect the constitutionality of the act. So to our minds, for all practical purposes, we think the Clark v. Finley case, above cited, is decisive of this question. However, appellant has cited us to a long line of authorities which, he claims, hold adversely to our decision in the case, as follows: Lewis Sutherland on Statutory Construction, vol. 1, sec. 200; City of Topeka v. Gillette, 4 Pac. 800; Dunne v. Kansas City Cable Railway Co., 32 S. W. Rep., 641; State v. Herman, 75 Mo., 354; State v. Wofford, 25 S. W. Rep., 851; State v. County Court, 1 S. W. Rep., 307; Smith v. Grayson County, 44 S. W. Rep., 921; Young v. State, 102 S. W.

Rep., 118; Holly v. State, 14 Texas Crim. App., 514; Cordova v. State, 6 Texas Crim. App., 220; Davis v. State, 2 Texas Crim. App., 425; Orr v. Rhine, 45 Texas, 352; Cox et al. v. State, 8 Texas Crim. App., 254, 286-9; Womack v. Womack, 17 Texas, 1; Graves v. State, 8 Texas Crim. App. 234; Gonzales County v. Houston, 81 S. W. Rep., 118; Ellis v. Fort Bend County, 74 S. W. Rep., 45; Flewellen v. Fort Bend County, 42 S. W. Rep., 775; Hill County v. Atchinson, 45 S. W. Rep., 144; Coombs v. Block, 32 S. W. Rep., 1139; Glover v. Weinroth, 34 S. W. Rep., 72; McMahon v. Pac. Ex., 34 S. W. Rep., 479; Dallas v. Elec. Co., 83 Texas, 243; Lewis Sutherland Con. Stat., vol. 1, sec. 203; Murray v. Bd. Co. Commissioners, 81 Minn., 359; 84 N. W., 103.

The lateness of this term and the enormous length that an opinion would necessarily reach to take up seriatim all of the authorities that appellant has cited, or any of them, would make it entirely too long. We candidly concede that the authorities on the question as to what is a special or local law differ nearly as widely as the number of decisions that have been rendered. We also readily concede that many of the authorities cited by appellant above hold that the act in question is unconstitutional because of the fact that there is no "enabling clause" in the jury law whereby other counties can come within the provisions of said jury law. On the contrary, however, we have found several decisions that combat this position and they appear to us more in consonance with reason and enunciate more clearly the distinction between a general and a special law than any that appellant has cited above. In the case of Elkin v. Moir, 53 L. R. A., 837; see also 199 Pa., 534, the Supreme Court of Pennsylvania held that a statute for the government of cities based upon classification can not be held unconstitutional as local or special, although it was intended, and the classification made, so as to apply to only a limited number of existing cities. Furthermore, that such an act was not unconstitutional because it provides for methods of government and administration different from those required in the other classes, in particulars where there is no real difference, if the classification is made with reference to municipal, and not to irrelevant or wholly local, matters. The court further says that the courts have nothing to do with its wisdom, propriety, or justice, or with the motives which are supposed to have inspired the passage of the act; that it is a matter of legislative and political policy addressed to the discretion of the Legislature. Furthermore, in said case the court, among other things, used the following language in quoting from Pittsburgh's petition, 138 Pa., 401, as follows: "It was urged that certain sections of the acts then in question made the act local 'by fixing dates at which acts necessary to put the government in operation are to be done,' which were possible only to one city, the city of Pittsburgh, and which are impossible to the city of Allegheny, which has come into the class since the act was

passed. The reply to this objection is that at the date when the act became a law there was but one city in the second class. The provisions of the act were general in their character. They related to all cities of the second class. If there had been several such cities, the terms employed would have applied to all alike. It was necessary, in order to give effect to the change in the system of municipal government, that a definite time should be fixed upon at which the change should take place and the new system be put in operation. The trouble with the act is not that it made such a pro-vision for cities then entitled to a place in the second class, but that it did not also make similar provisions for cities that should thereafter be entitled to come into the class. *We can not hold, however, that the failure to provide a date for the organization of cities afterwards to come into the class deprives such cities of the benefit of the law, or renders it local, and so inoperative, in the cities to which it would otherwise be applicable."* This authority is one of the most elaborate and best considered decisions that we have had access to, and the last proposition cited therefrom con-clusively answers the insistence of appellant that the jury law is unconstitutional because it has no enabling clause whereby other cities may come under the jury law. The court here very explicitly hold that it is a general law, although it applies to certain cities and does not apply to others nor is it rendered invalid by failing to provide that others may come within the provisions of the law. In the case of Cook v. State, 9 Tenn., 407, the court hold that the Dortch law is not unconstitutional as class legislation by reason of the fact that it is confined in its operation to counties having seventy thousand inhabitants and to cities having nine thousand inhabitants computed by the Federal census of 1880, or that should have such number of inhabitants by any subsequent Federal census. In said case, the court holds that the Legislature is the judge of the means to be adopted and their necessity, when it comes to classification of cities. That the power to regulate and reform the right of franchise in said cities is in said Legislature. They are presumed to know the conditions and wants of the State.

In the case of the State of Iowa v. Folkner, 94 Iowa, 1, the law was held not to be a local or special law that provided for a dif-ferent mode and method of regulating the sale of whisky for certain cities from that provided in cities of a different class. In the case of Caven v. Coleman, 96 S. W. Rep., 774, Judge Talbot, of the Fifth Court of Civil Appeals of Texas, in passing upon the Act of the Twenty-fifth Legislature, which required every city having under-ground sewers to create a board for the examination of plumbers with authority to issue licenses to plumbers who would pass a regular examination therefor, and prohibiting any person from conducting the business of plumbing until he or they shall have passed the required examination, held that said act was constitutional.

The rule there in reference to local or special laws is very tersely stated as follows: "We think it well settled that a statute which selects particular individuals from a class and imposes upon them special obligations or burdens, from which others in the same class are exempt, is unconstitutional; but such is not, in our opinion, the character of the statute under consideration." In this last cited case we have a statute under consideration held valid by the court, wherein it was provided that cities having underground sewers at the time of the passage of the law should have licensed plumbers. There is no provision in the act authorizing other cities to come within its provisions, but the act applies to all cities that then had underground sewerage. This case, we take it, is also in point on the jury law now under consideration. See also State v. Barrett, 138 N. C., 630.

In the case of Douglas v. People, 225 Ill., 536; vol. 8 L. R. A., 1116. The court held that a law requiring all engaged in the plumbing business in municipalities containing more than 5,000 inhabitants to procure a license, and requiring the appointment of a board of examiners in those of more than 10,000 inhabitants, is not an arbitrary classification, so as to render the statute invalid. That a statute requiring the procurement of a license by persons working at the business of plumbing in municipalities of more than 5,000 inhabitants throughout the State is not invalid as special legislation. Further commenting upon the question the court says: "The general rule is that a classification of the cities, towns, and villages of the State by population as a basis for legislation may be made if such classification is based upon a rational difference of situation or condition found in the municipalities placed in the different classes; otherwise legislation based upon such classification will not be sustained." They hold that there is a clear and rational difference in the situation or circumstances so far as the plumbing business and appointment of a board of examiners of plumbers is concerned in cities of 10,000 inhabitants or more. It is also urged that the act is not general in term and does not apply to all persons in the State alike, and for that reason it is class or special legislation. "The act does apply uniformly to the persons engaged in or working at the business of plumbing as master plumbers, employing plumbers, or journeymen plumbers in the several classes of cities, towns and villages created by the act throughout the State, and we think, therefore, it is not subject to the criticism of want of uniformity in its application. A law is said to be general and uniform, not because it operates upon every person in the State alike, but because it operates alike upon every person in the State who is brought within the conditions and circumstances prescribed by the law." Steed v. Edgar County, 223 Ill., 187. In Meyer v. Hazelwood, 116 Ill., 319, it was said:

"Laws are general and uniform and hence not obnoxious to the objection that they are local or special, when they are general and uniform in the .operation upon all in like situation." So we have in this case a uniform application of the jury law to all cities that come within its operation. It is a law in which the public at large have an interest in its enforcement and in its passage, in that there is a congested condition of population in the larger cities that to the legislative wisdom suggested that a different mode and method of selecting juries for said large congested centers should apply to the jury than that which applies throughout the balance of the State.

To ask the question as to whether or not a different condition exists is to suggest a governmental policy which, of course, addresses itself to the sound discretion of the Legislature and not to the courts. This law applies to all of the people of the county where the city of the population named is located and is uniform upon each. In the case of Title & Document Restoration Co. v. Kerrigan, 88 Pac., 356 (8 L. R. A., 682), the court had under review the law to provide for the re-establishment of lost record titles to real estate. This is a case from the Supreme Court of California, in which their Constitution in reference to the exception of certain things from special legislation is very similar to the exceptions in our own Constitution. They hold that said act is constitutional, and that it is not necessary that the law shall affect all the people of the State in order that it may be general, or that a statute concerning procedure shall be applicable to every action that may be brought in the courts of the State. A statute which affects all the individuals of a class is a general law, while one which relates to particular persons or things of a class is special, citing McDonald v. Conniff, 99 Cal., 386. The Legislature has the right to enact laws applicable only to one class where the classification is authorized by the Constitution or is based upon intrinsic differences requiring different legislation. A law which operates only upon a class of individuals is none the less a general law. See also Reed v. Rogan, 94 Texas, 177. In the last cited case the principle is laid down that where the public at large have an interest in the matter, and the legislation merely applies to a locality but affects all who live in said locality, or whose interests may be drawn to same, that the law is a general law and not a special one. We, therefore, hold that the jury law passed by the Thirtieth Legislature is in all things constitutional. That it is a general law applicable to all within its provisions, and the fact that it does not have a clause authorizing other cities to come within its provisions, does not render it invalid, nor does the fact that the jury law mentioned by appellant in his objections above stated differ from those of the jury law that applies to the rest of the State in any respect render said law unconstitutional.

There being no other question in appellant's case, in the absence of a statement of facts, that can be considered, the judgment is in all things affirmed.

*Affirmed.*

[Motion for rehearing overruled December 21, 1908.—Reporter.]

DAVIDSON, PRESIDING JUDGE (dissenting).—Not being able to agree with my brethren in holding the Act of the Thirtieth Legislature a general law, but believing it is a special law, I have thought it proper to file some reasons upon which I base my dissent.

That portion of the act which enters into this discussion is found in the following language: Section 1: "That between the 1st and 15th day of August, A. D. 1907, and between said dates every two years thereafter, in all counties in this State having a city or cities therein containing a population aggregating twenty thousand (20,000) or more people, as shown by the United States census of the year 1900, the tax collector, or one of his deputies, and the tax assessor, or one of his deputies, and the sheriff, or one of his deputies, and the county clerk, or one of his deputies, and the district clerk, or one of his deputies, shall meet at the courthouse of the county and select from the qualified jurors of the county the jurors for service in the district and county courts in such county for the ensuing two years, in the manner hereinafter provided." This is the only part of the act which fixes the criterion of classification or which attempts to classify the counties which are to be included in the operation of this act. At a glance it will be seen that all counties are excluded from the operation of this act, and perpetually so, except those which include a city or cities of twenty thousand inhabitants as determined by the United States census of 1900. This act is *exclusive,* and *perpetually* so, inasmuch as there is no provision in its terms which included counties with cities of twenty thousand inhabitants at the *time of its passage,* or such counties as may *thereafter* be similarly situated. Then it is not debatable that every county in Texas was excluded from the operation of the act except those having a designated class of a city or cities as evidenced by the United States census of 1900.

Several reasons were urged in the court below as well as in this court why this act was not a general one, but special, and, therefore, interdicted by the terms of the Constitution. I am of opinion these contentions are correct, and that the law is in direct violation of the spirit as well as the letter of the Constitution. An inspection of the Constitution makes patent the proposition that under our representative form of government, which is one of delegated power, to departments of government, every citizen of this State stands upon an equal basis unless for reasons otherwise stated in the Constitution. It will necessarily follow from this that, unless there is some reason

manifested in the Constitution, or it is otherwise therein provided, all laws in regard to jury trials must be general and apply alike to all of our citizenship, and the duties, obligations, rights, privileges, and immunities are the same to each and all. This is the general proposition, and every law infringing this idea will be unconstitutional unless it is otherwise provided in the organic law and it is not "otherwise provided" in regard to jury trials. Article 1, section 3 of that instrument provides: "All free men, when they form a social compact, have equal rights." Section 15, of article 1, says: "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency." Section 19, of article 1, ordains that, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Article 3, section 42, of the same instrument thus reads: "The Legislature shall pass such laws as may be necessary to carry into effect the provisions of this Constitution." Section 56, of article 3, provides: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing the summoning or impaneling of grand or petit juries." It further inhibits the passage of such special laws in the following language: "And in all other cases where a general law can be made applicable, no local or special law shall be enacted; provided, that nothing herein contained shall be construed to prohibit the Legislature from passing special laws for the preservation of the game and fish of this State in certain localities." So it will be seen by the provisions quoted that equality of rights and uniformity of legislation applicable alike to the citizenship of this State in jury trials is the underlying principle of the organic law, and to get away from this broad organic principle we must find somewhere in the Constitution that it is otherwise provided. That instrument may be searched in vain for any provision which will justify the Legislature in passing the act in question, for by the express terms of section 56, of article 3, the Legislature is specially prohibited from passing any special law in regard to such "summoning and empaneling of grand and petit juries," and this is emphasized by the other clause which says that no special law shall be enacted, where a general law can be made applicable, excepting out of the provision of this clause laws with reference to the protection of game and fish. There could not be a more special emphasis of the prohibition of special laws than by the word employed. This section not only expressly forbids such special laws, but emphasizes this by excepting out certain things. It is, therefore, emphasized, doubly so, that special laws with reference to matters contained in article 3, section 56, are not subject to special legislation. This is sought to be avoided by classifying counties by the criterion set forth, to wit: the census of 1900.

It occurs to the writer that the provisions of section 1 of the Act of the Thirtieth Legislature but emphasizes the fact that this law is special, and that it was an attempt on the part of the Legislature to evade the provisions of the Constitution above quoted. Even when the doctrine of classification is resorted to, it is found to be uniformly held by all the authorities that when the act applies alike to all of a class, it may be held to be a general law, but when it does not apply to all of a class so specified, it is a special law. This doctrine was recognized by our Supreme Court in Clark v. Finley, 54 S. W. Rep., 343, and it was by virtue of this rule that that high tribunal was enabled to hold the "fee bill" constitutional. In what is known as the "fee bill" law, provision was made, however, that all counties in Texas could be brought under the operation of the law on the happening of a certain contingency, therefore, the idea of *perpetual exclusion* was not in that law and it was so found by the Supreme Court. It was upon that theory and that alone that the fee bill law was upheld by our Supreme Court. Now, our Constitution provides specially and definitely that there shall be no special laws in regard to "summoning and empaneling grand and petit juries," and that no such law shall be passed when a general one could be made applicable. In other words, the Constitution makes it plain that legislation in regard to summoning and empaneling grand and petit juries must be of universal application throughout Texas, and it could not have been more plainly written if the wording had been expressed that such laws shall apply alike to every county in the State. Jury trials must "remain inviolate" and any discrimination in favor or against such jury trials would be violative of the Constitution, and would not constitute "due process of law." Every county in Texas should alike be brought under the operation of such laws, and no citizen subject to jury duty or who has the right to sit upon juries can be excluded without violating these plain provisions of the Constitution. Every citizen in Texas has equal rights in trials by jury under the terms of the Constitution, not so under this act. Have these rights been accorded under the provisions of the act in question? The answer is plainly in the negative. Why? Because the citizenship of the State at large are placed under a different rule and on different lines of procedure than in those counties which are within the purview of said act. All counties are excluded except those which had in 1900 a city or cities aggregating a population of twenty thousand inhabitants. Is this in accord with the provision of the Constitution with reference to "due process of law?" To this the answer must be in the negative. Will it be doubted that the Legislature could have as readily and as easily passed an act which could be made applicable to every county in the State? If not, why not? Some fancied reason why some of the counties should have a different rule from the others in regard to "summoning and "summoning and empaneling" juries would not justify nor authorize

a Legislature to pass an act otherwise than as provided in the Constitution. The police power or matters of policy on the part of the Legislature must be subordinate to the plain provisions of the organic law. I have been unable to find any tangible reason why the act in question could not have easily been made applicable to every county in the State as it was to the few counties made subject to the law, and under all the authorities that have come under my observation this law would be special in its operation. There is no reason, in view of the provisions of the Constitution, why Dallas County should come within this classification and the adjoining counties of Ellis, Kaufman, Collin and Hunt should not. The rights of the citizenship of these various counties are said to be equal in the bill of rights. All counties in Texas are on an equal basis, territorially speaking, as divisions of the State, and certainly the citizenship, personally speaking, and their rights ought to be the same in regard to jury trials. I can not conceive a reason, that would require or authorize the citizen of one county to be tried under a different jury system or method of procedure from those in any other or all other counties in view of constitutional provisions quoted. Why a method pursued in one county in these respects should be different from a method pursued in another and maintained in the face of the Constitution is not apparent. It is not giving to "all free men" "equal rights" from the standpoint of jury trials. Therefore, it seems to me that all laws in regard to "summoning and empaneling of grand and petit juries" can be but special laws, and, therefore, unconstitutional, when not of uniform general application to all the counties and all the citizenship of this State alike. I perhaps might rest with safety my dissent at this point, but there are other phases urged and my brethren have to some extent discussed them.

It is urged that the classification by the act under discussion is arbitrary. This to some extent has been noticed in what I have previously said. The act certainly does not apply to all counties similarly situated at the time of its passage, and by its provisions *excludes* all those that may be similarly situated in the future. It sometimes occurs that the line of demarkation between what is termed general and special laws is not as clear as should be under the decisions, many of which are more than doubtful in reasoning and wrong in effect. This confusion has doubtless arisen very largely because courts have a tendency to rather magnify their sense of courtesy or comity towards the legislative branch of the government, and withhold proper obedience to the Constitution, and these decisions have at times had the effect of overriding very largely the letter and real purposes of the Constitution. Certainly the Constitution is the paramount law, and to it all departments of the government should render obedience, for they are simply creatures of the people through the terms of that instrument. This comity may speak well for the courtesy and chivalry of the courts towards the coordinate branches

of the government, but rather disparagingly of their real and true loyalty to the organic and paramount law. It should be the undeviating purpose of all departments of government, as created by the Constitution, to adhere to the letter as well as to the real purpose and intent of that instrument. This is necessary to the end that the people who ordained and made it the paramount law may not lose or be deprived of its benefits. No act of the Legislature ought to be passed which infringes the intent or real purpose of the Constitution. Much less should one be enacted violative of the plain provisions of that instrument. If the Constitution is thought to be weak or inadequate, it can be amended or changed, but in no instance can any department of the government be authorized to do so. This must be done by a vote of the people. If it can be evaded in one respect, it would necessarily follow that it could be so done in every respect, and solely by legislative acts upheld by evasive rules of construction by the courts. It was well said in Morrison v. Bechert, 112 Pa. St. Rep., 178, "It ought to be unnecessary for this court to make this judicial declaration, but it is proper to do so in view of the amount of legislation which is periodically placed upon the statute book in entire disregard of the fundamental law. Much of this legislation may remain unchallenged for years only to be overturned when it reaches this court. In the meantime parties may have acted upon it; rights may have grown up, and the inconveniences and losses entailed thereby may not be inconsiderable. As we view it, this note of warning at this time is needed." The confusion, inconveniences, troubles and losses which may arise from such legislation should warn our legislative body to be careful and guarded in the enactment of laws to the end that they may stand and not fall, and that courts may not be called upon to set them aside. The courts should not hesitate to declare unconstitutional laws invalid to the end that our form of government may be preserved as intended by its founders.

Recurring to the terms of the Act in question, the proposition is urged that it is not a general law, is not uniform or equal, but special and local in its operation, and does not *properly* but *arbitrarily classify*. If this is true, the law is invalid. Lewis Sutherland, Statutory Construction, volume 1, section 199, is quoted as follows: "Special laws are those made for individual cases, or for less than a class requiring laws appropriate to its peculiar condition and circumstances; local laws are special as to place. When prohibited they are severally objectionable for not extending to the whole subject to which their provisions would be equally applicable, and thus permitting a diversity of laws relating to the same subject. The object of the prohibition of special or local laws is to prevent this diversity. 'Every subject of legislation,' says the Supreme Court of Ohio, 'is either of a general nature on the one hand, or local and special on the other. It can not be in its nature both general

and special, because the two are inconsistent.'" State v. Spellmire, 67 Ohio St., 77, 81; Fitzgerald v. Phelps et al., 42 W. Va., 570. As the decisions are it is somewhat difficult to fix any definite rule by which to solve the question as to whether a law is special or general. Often it is found to be expedient, to leave the matter largely to be determined upon the circumstances of the particular law. If the operation and effect of the law is necessarily special, the act itself would be special without reference to the form of the act. If on the contrary the act would operate upon all of the class of things present and prospective, the act might be general. That this question is not solved by mere matter of form has been expressly held or necessarily implied in practically all the cases. If this were not true, the Constitution could be very easily evaded by using language for special laws that would make it appear. in the guise of a general statute. Lewis Sutherland, Statutory Construction, sec. 200; Duffy v. New Orleans, 49 La. Ann., 114; State v. Herrmann, 75 Mo., 340; State v. Nelson, 52 Ohio St., 88, and a great number of cases.

So with reference to the classification of subjects for legislation, when an act is assailed as class or special legislation, the attack is necessarily based upon the claim that there are persons or things similarly situated to those embraced in the act, and which under the terms of the act are *excluded* from its operation. The question then, generally speaking, is whether the persons or things embraced by the act form by themselves a proper and legitimate class with reference to the purposes of the act. It seems to be agreed on all hands that the Constitution does not forbid a reasonable and proper classification of the subjects for legislation. Lewis Sutherland, Statutory Construction, section 203. One of the troubles arising in discussing these matters has been to fix a definite and absolute rule, and thus far it seems to have been found practically impossible, and, as before stated, it seems to be generally held that the question must be determined under the law as it arises. But in whatever shape the question may come it must *not* be a mere *arbitrary selection* or classification. See State v. Jacksonville Terminal Co., 41 Fla., 363. The Minnesota court lays down the following proposition in regard to the solution of these questions: 1. "The fundamental rule is that all classification must be based upon substantial distinctions which make one class really different from the other." 2. "Another rule is that the characteristics which form the basis of the classification must be germane to the purpose of the law; in other words, legislation for a class, to be general, must be confined to matters peculiar to the class. There must be an evident connection between the distinctive features to be regulated and the regulation adopted." 3. "Another rule is that to whatever class a law applies, it must apply to every member of that class." The 5th rule is as follows: "The last proposition to which we will refer is that the character

of an act as general or special depends on its substance, and not on its form. It may be special in fact, although general in form, and it may be general in fact although special in form. The mere fact is not material." State v. Cooley, 56 Minn., 540. In a subsequent case, to wit: Murray v. Board of Co. Com., 81 Minn., 359, that court said: "A law is general and uniform in its operation which operates equally upon all subjects within the class for which the rule is adopted, provided the classification be a proper one. The Legislature, however, can not adopt an arbitrary classification, for it must be based on some reason suggested by such difference in the situation and circumstances of the subjects placed in the different classes as to disclose the necessity or propriety of different legislation in respect thereto. Any law based upon such classification must embrace all, and exclude none, whose condition and wants render such legislation to them as a class or appropriate to them as a class. Legislation limited in its relation to particular subdivisions of the State, to be valid, must rest on some characteristic or peculiarity plainly distinguishing the places included from those excluded." See also Duluth Banking Co. v. Koon, 81 Minn., 486. The above seems to lay down the general rule as held by all the courts as drawing a proper distinction under the circumstances mentioned between what would constitute general and special laws. Referring to the decisions of our own State, we find as far back as James et al. v. Reynolds, 2 Texas, 250, the same rule announced and followed. The above doctrine has been approved in Harding v. People, 160 Ill., 464; Millet v. People, 117 Ill., 301; Kalloch v. Superior Court, 56 Cal., 238; Eames v. Savage, 77 Me., 21. So it has been held the term "laws of the land" are general public laws binding on all under similar circumstances, and not partial or private laws, affecting the rights of private individuals or private classes. Speaking on this matter in Clark v. Finley, supra, Chief Justice Gaines, delivering the opinion of the court, says: "The definition of a general law as distinguished from a special law, given by the Supreme Court of Pennsylvania in the case of Wheeler v. Philadelphia, 77 Pa. St., 338, and approved by the Supreme Court of Missouri, is perhaps as accurate as any that has been given. State v. Tolle, 71 Mo., 645. The court in the former case say: 'Without entering at large upon the discussion of what is here meant by a "local or special law," it is sufficient to say that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition.' * * * The tendency of the recent decisions upon the subject, as it seems to us, is to drift into refinements that are rather more specious than profitable. It is said in some of the cases that the classification must be reasonable; in others, that it must not be unreasonable or arbitrary, etc. If it is meant by this that the

Legislature can not evade the prohibition of the Constitution as to special laws by making a law applicable to a pretended class, which is, in fact, no class, we concur in the proposition. Such was the law passed upon in the case of Com. v. Patton, 88 Pa. St., 258. That statute was made applicable to all counties in which there was a population of more than 60,000 and an incorporated city with a population exceeding 8,000, 'situate at a distance from the county seat of more than twenty-seven miles by the usually traveled public road.' There was but one city in the State which came within the pretended class. The court held this a covert attempt at special legislation, and that the act was a nullity." Tested by the rule laid down in the Clark v. Finley case, supra, and which has been followed in this State since the case of Jones v. Reynolds, supra, I am of the opinion this law is not general but special. Our Supreme Court in the decision quoted lays down two rules: (1) The law is general where it covers all of the class. (2) But it is special when it does not cover all or every member of that class. Therefore, under the decisions of our own State the Act of the Thirtieth Legislature under discussion is special and not general.

My brethren refer to the case of Douglas v. People, 8 L. R. A., New Series, p. 1116. This case supports the writer's views of the subject of classification. In that case, as I understand, the Legislature was classifying cities. If the classification was proper the Legislature had the right to do so. That question as applied to classification of cities and towns would hardly be debatable in Texas by reason of the fact that the Constitution expressly provides that the Legislature has power and is clothed with full authority to pass special laws or acts with reference to cities of a population of 10,000 or more inhabitants, and general laws in regard to towns with less population. The immediate subject of discussion in Douglas v. People, was an act regulating the business of plumbing, etc. This significant expression is found in that opinion: "A law is said to be general and uniform, not because it operates upon every person in the State alike, but because it operates alike upon every person in the State who is brought within the conditions and circumstances prescribed by the law." Steed v. Edgar County, 223 Ill., 187. In Meyer v. Hazelwood, 116 Ill., 319, 329; 6 N. E., 480-486, it was said: "Laws are general and uniform and hence not obnoxious to the objection that they are local or special, when they are general and uniform in the operation upon all in like situation." That is the rule I am invoking and which I held correct in Clark v. Finley, supra. Wherever the Legislature has the right to classify, the rule referred to is correct. That opinion recognizes the doctrine contended for here; that is, that the Legislature has no right to classify when *arbitrary* or when it *excludes persons or things similarly situated.* Viewed in the light of the constitutional provisions heretofore noticed in this dissenting

opinion, the proposition is supported by the authorities relied upon by my brethren, that wherever classification. is resorted to, the act must apply to all alike who are similarly situated, whether upon persons or things, and the objection urged to the Act of the Thirtieth Legislature is that it does not apply to all counties alike similarly situated and that it institutes rules for those similarly situated both as to counties and persons· which are dissimilar. It fixes the manner of "summoning and empaneling grand and petit juries" entirely different in some portions of the State from what it does in others, and it directly *excludes* counties in the State *similarly situated* at the time of the passage of the law, and *forever debars* their coming under its operation. As before stated, if the Constitution with reference to this subject means anything, it means that every county in Texas shall have the same procedure in regard to "summoning and empaneling grand and petit juries," and every citizen shall be tried under the same procedure with reference to "summoning and empaneling grand and petit juries." That the same rule should govern alike every county and that every citizen should stand upon the same plane where his life and his property are involved in so far as jury trials are concerned, ought to be self-evident and the Constitution so directly ordains. This matter of jury trials has perhaps been regarded by our race as being one of its most sacred reserved rights. At the time of the passage of the Act under discussion there were other counties in Texas containing a city or cities whose population numbered twenty thousand inhabitants. These were and are excluded for all time to come and every county in Texas was excluded except perhaps seven or eight. This Act can not be sustained upon any known or rational theory of classification, in my judgment. In fact there is no attempt at *classification*. It was but a *mere exclusion* of certain counties, and in fact nearly all counties in the State. It is but a mere *designation* of a few counties and makes no provision by which any other county in the State may by reason of its increase of population in the growth of cities in the future, come within its provisions. See authorities already cited. In Scowden's Appeal, 96 Pa. St., 422, this language was used: "The Act of June 12, 1879, makes no attempt at classification of cities. It is merely an effort to legislate for certain cities of the fifth class, to the exclusion of all other cities of the same class." See also City of Scranton v. Silkman, 113 Pa. St., 191; State ex rel. West v. Des Moines, 31 L. R. A., 189, and Campbell v. City of Indianapolis, 57 N. E. Rep., 925; McInerney v. Denver, 29 Pacific Rep., 516; State v. Scott, 100 N. W. Rep., 812. The latter case construed an act regulating county offices, which, in its terms, limited the operation of counties having a population of 50,000 according to the census of 1900, which is the same as our jury act under consideration, and held the act local and special since it can never apply to any of the counties

except the two that were in the class at the time of the passage of the act. See also Central Trust Co. v. Railway Co., 82 F. (U. S. C. C., 1897). In DeHart v. Atlantic City et al., 73 Atlantic Rep., 743, the act discussed authorized creation of district courts in counties of 20,000 or less which should by resolution adopt the act within three months from its passage. It was held a special law, because it denied to all then existing cities whose necessities might at any time after the three months have demanded a district court, as well as two new cities, and the effect of the limitation as a restriction of the class to which the law may apply. The same proposition is laid down in Murphy v. Long Branch, 61 Atlantic Rep., 593; State v. Queen, 40 S. E., 554, in a South Carolina case. That act designated certain counties 'by name (our jury law does this in effect), and provided for the drawing and listing of grand juries which was held to be a special law and obnoxious to a similar prohibition of our Constitution as found in article 3, section 56. This case is directly decisive of the constitutionality of the Act of the Thirtieth Legislature under discussion. To the same effect see Railway Co. v. Martin, 41 N. E. Rep., 691. That law was held to be a mere evasion, and was really but an exclusion of future cities. In regard to evasion see Endlich Stat. Con., sec. 521; State v. Schwab, 34 N. E., 736 (Ohio). The act then under discussion was held special although written in general terms. It only applied to one city and never could to any other, only one census being named as a criterion for determining the class. See also State v. Elliott, 23 N. E. Rep., 931, is to the same effect, as is State v. Anderson, 6 N. E. Rep., 571. See also State v. Board of Managers, 89 Mo., 239; State v. Justices, 1 S. W. Rep., 307; Wanser v. Hoos, 60 N. J. Law, 482; State v. Messerly, 95 S. W. Rep., 913; Burham v. City, 73 N. E. Rep., 1018 (Wis.). It was held In re Henneberger, 50 N. E. Rep., 61, that a mere designation is not a classification. In Angell v. Cass County (N. D.), 91 N. W. Rep., 73, it was said: "A law is general and uniform in its operation which operates equally upon all subjects within the class for which the rule is adopted, provided the classification be a proper one. The Legislature can not, however, adopt an arbitrary classification, for it must be based on some reason, suggested by such a difference in the situation and circumstances of the subject placed in different classes as to disclose the necessity or propriety of different legislation in respect thereto, * * * legislation limited in relation to particular subdivisions of the State, to be valid, must on some characteristic or peculiarity plainly distinguishing the places included from those excluded." See also State v. Ritt, 79 N. W. Rep., 535; Duluth Banking Co. v. Koon, 84 N. W. Rep., 336. These cases might be cited almost without number supporting the same proposition.

As to another phase of this law and its constitutionality, to wit: That it is *exclusive*, and operates for the *present* only, to the *exclu-*

*sion* of the *counties* which might come within its operation, all the authorities support the contention of appellant. Hetland v. Board, 95 N. W. Rep., 305, holds an act special where its operation was limited to such counties as had at the time of its passage expended at least $7,000 for courthouse purposes. The court says the classification was both *illusive* and *arbitrary* and that it was *unique* and *novel.* "To approve it would open the door to all sorts of special legislation, general in form but special in fact, the only limitation to which would be the ingenuity of legislators in devising new classifications." Without going into a further discussion of this particular phase of the subject, I cite in support of my views the following cases: State v. Simon, 53 N. J. Law, 550; Bennett v. Common Council, 55 N. J. Law, 72; Parker v. Common Council, 57 N. J. Law, 83; Coutieri v. City, 44 N. J. Law, 48; Zeigler v. Gaddas, 44 N. J. Law, 363; Douglass v. People, 80 N. E., 341. In my opinion it is a safe proposition to assert that the Act of the Thirtieth Legislature does not apply to every county in the State and is, therefore, void. That to make it a general law, it must not legislate only for present or unchangeable conditions. I am persuaded that no case can be found in the reports which holds a law to be general which failed to provide for and anticipate the wants of the future. On the contrary, whenever the question has arisen, every court has held a law special which created a classification which was *arbitrary* or *illusive,* and which operated upon *unchangeable conditions* and failed to provide for *future* localities or objects to come within the class, no matter how ingenious the evasion employed to make a special law assume the guise of a general law may have been. Perhaps, there may be no limit to the ingenuity displayed by legislative bodies intentionally or otherwise, to make a mere *designation* assume the form of a *classification.*

I have written beyond what I intended, but it occurs to me that the Act under consideration is so entirely obnoxious to our Constitution and to the authorities, and to our jurisprudence, that I have amplified beyond my first intention. To my mind there is no reason why this law should be upheld; that it is fundamentally violative of the Constitution and that it is an *arbitrary* designation operating upon a few counties and *excluding* from its operation all counties wherein cities may accumulate a population that ought to entitle them to come under its operation. But it is still farther objectionable, because it is at fundamental variance with that uniformity and equality of the equal rights of our citizenship. It strikes at the great inviolability of jury trials. It makes those trials and procedure under them different in different localities, leaving the great body of the State and different sections under entirely different rules, and it injects in jury trials a procedure different in parts of the State from those obtaining in other parts, thereby

directly and expressly violating the plain provisions of the Constitution as enunciated in article 3, section 56, which says no special law shall be passed in regard to "summoning and empaneling of grand and petit juries."

I will express in conclusion a sense of obligation and appreciation to the attorneys in other cases involving this question. My brethren selected this case in which to write the opinion. The arguments and briefs in the case of Brown v. State, by Messrs. Crawford & Lamar, Messrs. Crane, Gilbert & Crane, and Messrs. Muse & Allen; and the arguments and brief in the case of Pate v. State, by Messrs. Thomas & Sewell and Messrs. Crawford & Crawford; and the argument and brief in the case of Lee v. State, by Mr. E. T. Branch, are able and convincing, and have been of great service to the writer in his investigation of the questions involved. I deem it but right that I should make this statement in view of the fact that I have been so greatly assisted by them in the cases represented by them respectively. I also mention my high appreciation of the brief in this case of Mr. A. S. Baskett, who represented appellant, and so ably presented the questions involved.

I shall pursue no farther a discussion of the questions involved, but for the reasons suggested I respectfully dissent from the conclusion reached by my brethren.