**GOLLEHON et al. v. PORTER.**
No. 5399.

Court of Civil Appeals of Texas. Amarillo.
March 2, 1942.

Rehearing Denied April 6, 1942.

Second Motion for Rehearing Denied
April 27, 1942.

Joe S. Moss, of Post, for appellants.

T. L. Price, of Post, and Crenshaw, Dupree & Milam, of Lubbock, for appellee.

STOKES, Justice.

This suit was filed by appellee, B. H. Porter, against appellants, Milton Gollehon and R. G. Gollehon, to recover delinquent rentals on a building owned by Porter and located at Post in Garza County. Appellee set up his landlord's lien on certain personal property consisting of five pool tables, three snooker tables and other equipment used by appellant, Milton Gollehon, in operating a pool hall in the building. The rentals alleged to be due and unpaid had accrued for the months of August, 1940, to February, 1941, inclusive. On February 26, 1941, appellant, Milton Gollehon, vacated the building and removed all of the personal property and equipment therefrom, and on the 8th of March, 1941, appellee sued out a distress warrant in the justice court which was levied upon the property and returned, as directed, to the county court. In due time appellee filed his petition and the case was tried on June 13, 1941, before the court without the intervention of a jury. The trial resulted in a judgment in favor of appellee and against appellants for $350., together with foreclosure of appellee's landlord's lien. Appellants duly excepted to the judgment, gave notice of appeal and present the case in this court upon a number of assignments of error. The controlling issues presented by the brief are encompassed in appellants' contentions that the court erred, first, in rendering judgment against them because the premises, with the knowledge and consent of appellee, were leased and used for the purpose of operating a pool hall in violation of the law; secondly, that error was committed by the court in overruling their motion to quash the distress warrant and bond upon grounds which will hereinafter be mentioned; and, thirdly, that error was committed in rendering a summary judgment against the sureties on the replevy bond because it was not a statutory bond.

Under their first contention, appellants assert that appellee was in pari delicto with them in the operation of the pool hall, which they allege, and the evidence shows, was at all times being operated in violation of Articles 4668, R.C.S. 1925, and Article 653 of the Penal Code. The trial court found that appellee did not aid, assist or abet appellants in any way in the operation of the business in his building; that he had no knowledge at any time that any illegal business was being operated therein; but that he believed at all times that the business being operated by appellant, Milton Gollehon, under the trade name of Garza Club for Ladies and Gentlemen was being operated in a legal manner. These findings are amply supported by the testimony in the case. The law is well settled that where two persons are guilty of participating in an unlawful transaction, neither a court of law nor a court of equity will aid either to recover upon any alleged rights which may have accrued to him thereunder but will leave the parties in the condition in which it finds them and in which they have placed themselves. The statutes referred to do not inhibit the possession or use of pool tables and equipment. Article 653 of the Penal Code denounces the operation or maintenance of a pool hall as that term is defined by the laws of the State. The definition is found in Article 4668, R. C.S.1925, and is "any room, hall, building or part thereof * * * in which are exhibited for hire, revenue, fees or gain of any kind, or for advertising purposes of any kind, any pool or billiard table or stand or structure of any kind or character on which may be played pool or billiards, or any game similar" thereto. Appellant, Milton Gollehon, testified that he operated the business under the name of Garza Club for Ladies and Gentlemen, but his testimony shows very clearly that, instead of being a social club as its name indicates, it was nothing more nor less than an ordinary pool hall in which he exhibited his tables and permitted their use in consideration of certain fees and charges. It is further shown that appellee knew the pool hall equipment was located in the building and that he played at least one game of pool therein. The testimony is uncontroverted, however, that he did not pay any fee or charge for this game and that he did not know appellant, Milton Gollehon, was making or collecting any charges or operating the establishment in any manner that would make it a violation of the law. As we have said, there is ample evidence in the record that appellant, Milton Gollehon, was operating the pool hall in violation of the law, but there is no evidence which raises the issue that appellee knew he was doing so. The gravamen of the statutory inhibition is the operation of such an es-

tablishment for hire, revenue, fees or gain of some kind, or for advertising purposes. There is no showing that any articles of merchandise were maintained in the building for sale, and since it is not shown that appellee knew the place was being operated in violation of the law, it can not be said he was in pari delicto. Appellants' assignments of error raising this question will therefore be overruled. Eckles v. Nowlin et al., Tex.Civ.App., 158 S.W. 794; Carrell v. Laird, Tex.Civ.App., 53 S.W.2d 323; Countee v. State, 119 Tex. Cr.R. 131, 44 S.W.2d 994; Allen v. State, 122 Tex.Cr.R. 4, 53 S.W.2d 481; McCombs et al. v. State, Tex.Civ.App., 48 S.W.2d 665.

The next contention made by appellants is that the court erred in refusing to quash the distress bond and warrant in the distress proceeding. The grounds upon which they sought to suppress the bond and writ were that the bond did not obligate the plaintiff in the case to pay any damages that appellants might sustain in case the distress warrant had been illegally and unjustly sued out, and that the distress warrant was issued after the property was removed from the building. The bond obligated "B. H. Hunter" as principal and the other signers as sureties to pay such damages as appellants might sustain in case the distress warrant was illegally and unjustly sued out. The record shows that the given name of appellee was "Hunter." The bond is styled B. H. Porter v. R. G. Gollehon and Milton Gollehon, and it is stated in the bond that B. H. Porter is the principal therein. It is evident that the insertion of the name Hunter instead of Porter at one place in the bond was merely a typographical or technical error. The bond is amply sufficient to show that B. H. Porter, the plaintiff in the case, was the principal in the bond, and that the others were sureties. We find no merit in this contention of appellants. La Force v. Wear-Boogher Dry-Goods Co., 8 Tex.Civ.App. 572, 29 S.W. 75.

The record shows that the distress warrant was not sued out until some ten or twelve days after appellants had removed the property from the building. The court found that the building was vacated without appellee's knowledge or consent and upon learning that it had been vacated he sued out the distress warrant. Article 5239, R.C.S.1925, provides that a distress warrant may issue when any rent shall become due or the tenant is about to remove from such leased or rented building or remove his property therefrom. Appellants contend that the wording of the statute implies and necessarily means that the distress warrant can not legally issue after the property has been removed from the building. The contention has been settled by the courts adversely to appellants, and we deem it unnecessary to discuss the question further than to cite and quote from the case of Webb v. Bergin, Tex.Civ.App., 38 S.W.2d 841, 842. In that case Justice Alexander, speaking for the Court of Civil Appeals for the Tenth District, said:

"As to the right to have the distress warrant issue after the fixtures had been removed from the leased building, the statute provides that it may issue when the debt becomes due or the tenant is about to remove from the leased or rented building or remove his property therefrom. This fixes the time when the right first accrues, but it does not require that the right be exercised the very moment it accrues. It may be exercised at any time before the lien is lost. Under Revised Statutes, article 5238, the lien continues so long as the tenant occupies the leased premises and for one month thereafter. If it were necessary that the distress warrant issue before the fixtures were removed from the building in order to preserve the lien, the thirty days provided for in the statute would be worthless. It was not necessary that the distress warrant be sued out before the fixtures were removed from the building."

Under the next contention appellants assert that the replevy bond executed by them and their sureties, under which they resumed possession of the distrained property, was not a statutory bond and the court was therefore not authorized to render summary judgment against the sureties thereon. The contention here is that the replevy bond filed by appellants, under which they recovered from the sheriff possession of the pool hall equipment and articles upon which appellee was seeking to foreclose his landlord's lien, was not executed nor filed within ten days after the levy was made under the distress warrant as provided by Article 5231, R.C. S., and it was not, therefore, such a bond as is authorized by the statute. Appellants do not cite us to any case or legal au-

thority wherein this question has been decided or discussed, and in a rather extensive search we have been unable to find any. However, we are unable to agree with appellants in this contention. The statute gives to a defendant the right to replevy distrained property at any time within ten days from the date of the levy of the distress warrant. It does not, however, prohibit such replevy after the expiration of the ten days. Under the common law of England the distress was executed or issued by the plaintiff landlord and the property levied upon was taken into his possession. He was not allowed to sell it, but was permitted to retain it until the debt was paid. It was considered in the nature of a pledge or security. In 1689 a statute was enacted by Parliament which provided that in all cases of distress for rent, the distrainor should have power to sell the distress unless replevied within five days. In interpreting the statute, the courts held that, as the property was at all times repleviable under the common law, it was not the purpose of the statute to change that right until the property passed by sale. Jacob v. King, 5 Taunt. 451, 11th Laws of England 181. Article 5233 of our statute provides that if the property is perishable or of a wasting nature and the defendant fails to replevy the same as provided by law, the officer making the levy, or the plaintiff or defendant, may apply to the court for an order to sell it. Obviously, the ten-day period provided in Article 5231, in which the defendant is given the exclusive right to replevy, was for the benefit of the defendant, who is the owner of the property. Its purpose was to preserve the property for the ten-day period and place it at his exclusive disposal so that he could repossess it and thereby prevent excessive expenses of its keep or damage that might accrue while it was in the hands of the sheriff. We conceive of no reason why the lawmakers would limit to ten days the defendant's right to replevy his property and then deny him that right completely if it was not executed within that time. In our opinion, the purpose of the statute was to preserve the right exclusively to the defendant for a short time in order that he might protect his own property and prevent its sale within that time, even though it might be of a perishable nature and subject to sale as provided by Article 5233.

■ However that may be, the only complaint made by appellants in regard to the replevy bond is that by virtue of the fact that it was not filed within the ten days provided by the statute, it was not a statutory bond. Under Article 5232, R. C.S., the court is authorized to render judgment against the sureties on the replevy bond if final judgment is rendered against the defendant. It is held by our courts that this entitles the sureties on the bond to appear in the case and present any reasons they may have why judgment should not be rendered against them on the bond, and to prosecute an appeal in the event they are dissatisfied with the judgment entered by the court. Clayton v. Stephenson, Tex.Civ.App., 254 S.W. 507; Mariany v. Lemarie et al., Tex.Civ.App., 83 S.W. 215; Southern Surety Co. v. Texas Oil Clearing House et al., Tex.Civ. App., 266 S.W. 529; Id., Tex.Com.App., 281 S.W. 1045; Wandelohr et al. v. Rainey et al., 100 Tex. 471, 100 S.W. 1155; Janes et al. v. Reynolds' Adm'rs, 2 Tex. 250; Carroll v. Oranie et al., 104 Fla. 225, 139 So. 593.

■ The court exercised the authority given under Article 5232 and rendered judgment against the sureties on the replevy bond along with the appellants. Although the sureties had the right, not only to appear in the case and present any defense they may have had, but also the right to appeal therefrom, they did not except to the judgment nor give notice of appeal, and have made no effort to perfect an appeal. As far as the record shows, the sureties are satisfied with the judgment. At any rate, not having perfected an appeal from it, they are bound by its terms. The judgment was not void and if the sureties were not satisfied with it, they should have prosecuted an appeal as any other defendant would be required to do. We find no merit in this contention and the assignments of error in respect thereto will be overruled.

The trial court rendered judgment against R. G. Gollehon and Milton Gollehon. It was agreed in open court by all parties that R. G. Gollehon never made any lease contract with appellee and the testimony shows that he had nothing whatever to do with the business conducted by Milton Gollehon in the leased building. Appellee admits in his brief that the record is insufficient to support a personal

judgment against R. G. Gollehon, but contends that the evidence was sufficient to support a judgment against him for foreclosure of the landlord's lien. It appears that the only reason R. G. Gollehon was made a defendant in the case was that he held some kind of a lien or mortgage on the property. We agree with appellee that, under the testimony, R. G. Gollehon's lien was subordinate to the landlord's lien and that judgment should have been entered against him only for foreclosure of appellee's superior lien. The judgment should, therefore, be reformed accordingly.

We have carefully examined all of the contentions presented by appellants, and, in our opinion, none of them reflects error except as indicated in reference to the personal judgment rendered against R. G. Gollehon. As to him, the judgment of the court below will be reversed and here rendered that appellee be denied a personal judgment, but that he have judgment foreclosing his lien. In all other respects, the judgment of the court below will be affirmed.